[No. A046200. First Dist., Div. Four. Jan. 31, 1990.]

In re KENNETH NESPER on Habeas Corpus.

**COUNSEL**

Robert V. Vallandigham, Jr., for Petitioner.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Paul D. Gifford, Karl S. Mayer and Susan J. King, Deputy Attorneys General, for Respondent.

**OPINION**

**PERLEY, J.**—Petitioner claims that he was discharged from parole by operation of law pursuant to Penal Code[1] section 3001, subdivision (a), when the Board of Prison Terms (BPT) failed to act to retain him on parole. During the relevant time period, section 3001, subdivision (a), provided: "Notwithstanding any other provision of law, when any person referred to

---

[1] Unless otherwise indicated, all further statutory references are to the Penal Code.

in subdivision (a) of Section 3000 has been released on parole from the state prison, and has been on parole continuously for one year since release from confinement, the board shall, within 30 days, discharge such person from parole, unless the board, for good cause, determines that such person will be retained on parole. The board shall make a written record of its determination and transmit a copy thereof to the parolee." (Stats. 1978, ch. 582, § 2, p. 2004.)[2]

On October 29, 1982, petitioner was sentenced to a term of eight years in state prison. He was paroled on December 6, 1986. On September 21, 1988, petitioner's parole was revoked for a period of 12 months. He filed a petition for habeas corpus in the superior court on October 3, 1988, contending that the parole revocation was invalid because he was no longer on parole after December 6, 1987, due to the failure of the BPT to extend his parole as required by section 3001 subdivision (a). The superior court denied the petition citing *In re Welch* (1987) 190 Cal.App.3d 407 [235 Cal.Rptr. 470], and petitioner filed for habeas relief in this court. In an initial brief in opposition to the petition, the Attorney General took the position that, although petitioner's parole agent had recommended that the BPT retain petitioner on parole, no documents exist showing that the BPT acted. We issued an order to show cause.

We turn first to the Attorney General's argument that under section 3001 subdivision (a) as it read in 1987 parole was automatically extended even if the BPT took no action. The Attorney General agrees that under the current wording of section 3001, subdivision (a), the BPT is required to take affirmative action to retain a parolee on parole after completion of a one-year period on parole.[3] The current wording provides that a person shall be discharged from parole unless the BPT "acts by determining for good

---

[2] Respondent does not dispute that petitioner was a person within the class of inmates defined in section 3000, subdivision (a), a section providing for a parole period not exceeding three years.

[3] In 1988 Penal Code section 3001 was amended by the Legislature. (Stats. 1988, ch. 1357, § 1.) Subdivision (a) now reads: "Notwithstanding any other provision of law, when any person referred to in subdivision (a) of Section 3000 who was not imprisoned for committing a violent felony, as defined in subdivision (c) of Section 667.5, has been released on parole from the state prison, and has been on parole continuously for one year since release from confinement, within 30 days, that person shall be discharged from parole, unless the Department of Corrections recommends to the Board of Prison Terms that the person be retained on parole and the Board of Prison Terms acts by determining, for good cause, that the person will be retained on parole. Notwithstanding any other provision of law, when any person referred to in subdivision (a) of Section 3000 who was imprisoned for committing a violent felony, as defined in subdivision (c) of Section 667.5, has been released on parole from the state prison, and has been on parole continuously for two years since release from confinement, the board shall, within 30 days, discharge that person from parole, unless the board for good cause, determines that the person will be retained on parole. The board shall make a written record of its determination and transmit a copy thereof to the parolee."

cause, that the person will be retained on parole" rather than that a person shall be discharged unless the BPT "determines" that such person will be retained on parole. We do not regard the change in wording as significant. Nor, apparently, did the Legislature. The digest accompanying the bill explains that the amendment would provide that a person imprisoned for committing a violent felony would have to be on parole continuously for two years to be eligible for discharge of parole. Only a person not convicted of a violent felony would be discharged under section 3001 after one year. In section 2, the Legislature provided that the act should go into immediate effect for the following reasons: "The facts constituting the necessity are: It is essential that immediate action be taken to ensure that violent offenders are retained on parole."[4] No other change is attributed to this amendment by either the digest or the urgency clause.

We also regard it as significant that the Department of Corrections itself has interpreted the section as discharging parole automatically unless the BPT acts. In its Parole Operations Manual (POM) the Department of Corrections has instructed its parole agents on the procedure for discharging or retaining a person on parole. Even prior to the amendment of section 3001, the employees of the California Department of Corrections were instructed that the failure of the BPT to act to retain a parolee on parole before the expiration of the time periods provided in the statute automatically resulted in the discharge of the parolee by operation of law. (POM, § 1703, pp. 159-160.) The Department of Corrections has no explanation for its present inconsistent interpretation of the statute.

To support its construction of the statute, the Attorney General relies solely on the case of *In re Welch, supra,* 190 Cal.App.3d 407, and the later case of *People* v. *Lara* (1988) 206 Cal.App.3d 1297 [254 Cal.Rptr. 360]. In both cases, the courts held that parole was not automatically terminated when the BPT failed to retain the parolee on parole within the time limit of section 3001. These cases are distinguishable on their facts from the case at hand. In both cases, the BPT had no opportunity to act within the statutory time limit of section 3001 because the defendant was not on actual parole during the relevant period but on constructive parole due to a recalculation of the parole release date. Welch was in prison after conviction in three separate cases when his conviction in one case was reversed. He was released on January 31, 1985, and parole was revoked on August 9, 1985. However, by crediting the time he spent in prison on the reversed conviction to his parole, a release date of December 1983 was retroactively calculated. The reviewing court rejected Welch's argument that his parole should

---

[4]The amendment does not apply to petitioner since the Legislature also provided that the amendments would be applied prospectively only. (§ 3001, subd. (d).)

be considered terminated one year after this fictitious release date since the BPT did not act to retain Welch on parole by December 1984. *Lara* also involved a recalculation of a parole release date. Lara was actually released on parole on February 19, 1987. However, he *should* have been released on parole on March 27, 1986, and the parole period should have been calculated from that date. The reviewing court refused to accept this fictitious release date to determine when the BPT was required to act to retain Lara on parole.

The *Lara* court explained: "It is clear from a fair reading of section 3001, subdivision (a), that that statutory provision does not contemplate the automatic termination of parole terms, under any circumstances. Rather, section 3001, subdivision (a), places a mandatory duty on the Board of Prison Terms to affirmatively act either to continue or to terminate the parole status of parolees who have been *actually free of confinement for a continuous year,* irrespective of when such freedom from imprisonment *should* have occurred." (206 Cal.App.3d at p. 1302, original italics.)

■ We do not disagree with the above interpretation of section 3001, subdivision (a). We think it an unreasonable interpretation of the section to impose a duty on the BPT to retain a prisoner on parole when that prisoner is not *actually* on parole but is still in prison. ■ A statutory construction that leads to absurd consequences should be avoided. (*People v. Colver* (1980) 107 Cal.App.3d 277, 285 [165 Cal.rptr. 614].) ■ However, a commonsense reading of section 3001, subdivision (a), together with the interpretation of that section by respondent itself in its parole procedures, lead to the conclusion that when a person has been actually free of confinement for a continuous year, that person's parole terminates unless the board acts to retain the person on parole.

We initially filed an opinion concluding that petitioner's parole terminated when the BPT did not act to retain him on parole. Before our jurisdiction expired, the Attorney General supplied evidence that the BPT in fact had acted. The Attorney General had argued in the return to the order to show cause that the BPT had acted but did not furnish evidence which substantiated that allegation. It is the duty of the party who is ordered to show cause to present all its evidence to this court at the time it makes its return and this evidence was available to the Department of Corrections at that time since it was in petitioner's central prison file. However, in the interest of factual accuracy, we granted rehearing and turn now to the issue of whether the BPT's action was ineffective to retain petitioner on parole because of a denial of due process.

■ The first step in analyzing this issue is to determine whether the due process clauses of the California Constitution mandate that an individual be

granted procedural protections prior to a final decision that he be retained on parole. (Cal. Const., art. I, § 7, subd. (a), § 15.) As the California Supreme Court explained in *People* v. *Ramirez* (1979) 25 Cal.3d 260, 265 [158 Cal.Rptr. 316, 599 P.2d 622], under the federal approach to due process, a prisoner's asserted interest is within the scope of due process if the state statute from which the interest is derived "protects the interest by permitting its forfeiture only on the happening of specified conditions." This is the situation here. As we explained above, at the time petitioner was retained on parole, section 3001, subdivision (a) required the BPT to act to retain petitioner on parole and to act only if it found good cause for retention.

Furthermore, the *Ramirez* court rejected the restrictive federal approach and held that "the due process safeguards required for protection of an individual's statutory interests must be analyzed in the context of the principle that freedom from arbitrary adjudicative procedures is a substantive element of one's liberty. [Citation.] This approach presumes that when an individual is subjected to deprivatory governmental action, he always has a due process liberty interest both in fair and unprejudiced decisionmaking and in being treated with respect and dignity. Accordingly, it places front and center the issue of critical concern, i.e., what procedural protections are warranted in light of governmental and private interests." (*People* v. *Ramirez, supra*, 25 Cal.3d at p. 268.)

The statutory procedure for discharge from parole requires limited procedural protections. Thus, section 3001, subdivision (a) itself requires that the board make a written record of its determination and transmit a copy to the parolee. The California Code of Regulations provides that the parolee does not have a right to a personal appearance during the review. However, that code also requires that the parolee be given a copy of the board's decision "including the reasons for a decision not to discharge the parolee." (Cal. Code Regs., tit. 15, § 2535, subd. (c).) In addition, the parolee has the right to an appeal and to an annual review if the board does not discharge the parolee. (*Ibid.*)

Petitioner here was not accorded the most basic procedural protection, i.e., notice of the decision of the board. Without that notice, he could not participate in any way in the decision process including the exercise of his right to appeal.

Respondent contends that petitioner is not entitled to relief on this petition because he failed to exhaust his administrative remedies by challenging the failure of the BPT to discharge him from parole once the year had passed. Respondent points to the fact that petitioner obviously knew that he was still on parole since he continued to report to his parole officer. Respon-

dent's contention is specious in view of the fact that petitioner was not notified of the action of the BPT as required by section 3001, subdivision (a), the California Code of Regulation, and by the POM. In the POM, the parole agent is directed to provide the parolee with a copy of the decision form and an appeal form if the decision is to retain on parole. (POM, § 1703, p. 161.) By this means, the parolee is informed both of the status of his parole and his right to a review of a decision to retain him on parole. Since this was not done in the instant case, petitioner's failure to utilize an administrative remedy is excused.

Petitioner not having received the due process rights to which he was entitled, the act of the BPT in retaining him on parole was ineffective. Therefore, the BPT did not have jurisdiction to revoke parole on September 21, 1988.

The order of that date revoking parole is hereby annulled.

Anderson, P. J., and Poché, J., concurred.

The petition of respondent Attorney General for review by the Supreme Court was denied April 19, 1990.