[No. F014251. Fifth Dist. May 23, 1991.]

In re JAMES RANDALL RUZICKA on Habeas Corpus.

## COUNSEL

John K. Van de Kamp and Daniel E. Lungren, Attorneys General, Richard B. Iglehart, Chief Assistant Attorney General, Morris Lenk and Paul D. Gifford, Deputy Attorneys General, for Appellant.

Paul Delano Wolf, under appointment by the Court of Appeal, and Jeffrey S. Kross for Respondent.

## OPINION

**THAXTER, J.**—We hold that respondent James Randall Ruzicka was denied due process when he was not given a copy of the written record of the Board of Prison Terms' (hereafter BPT) decision to retain him on parole. To that extent we follow *In re Nesper* (1990) 217 Cal.App.3d 872 [266 Cal.Rptr. 113]. We disagree with *Nesper*'s conclusion, however, that the appropriate remedy is to invalidate the parole-retention determination. Instead, we order that Ruzicka be given a copy of the written record as required by Penal Code[1] section 3001, subdivision (a) so that he may pursue his right to an administrative appeal.

### SUMMARY OF FACTS AND PROCEEDINGS

Following a 1985 criminal conviction, Ruzicka served a prison term and was paroled by appellant California Department of Corrections (hereafter DoC) on October 1, 1987, for a term of three years pursuant to section 3000, subdivision (a).

On October 20, 1988, Ruzicka's then-parole agent, D. J. Romero, completed a discharge review. He observed that Ruzicka, "a 28 year old first termer with no previous criminal record" and no pending charges or investigations, had "made a positive adjustment and appears to have well thought out plans for his future." Romero recommended that Ruzicka be discharged from parole, as did his supervisor.

Despite this recommendation, on October 24, 1988, the BPT elected to retain Ruzicka on parole, pursuant to section 3001. The file entry cites "the severity of the commitment offense" and states that "A longer period of parole supervision is needed to determine if [Ruzicka]'s apparent short-term gains are, in fact, permanent."

Ruzicka did not receive written notice of this decision. He may have received some other form of notice, however, as he apparently called Parole Agent Romero on November 8, 1988, to complain about the decision.[2]

---

[1]All statutory references are to the Penal Code unless otherwise indicated.

[2]The only evidence of this phone call was the declaration of Mark Stockton, Romero's successor, who averred that he had read a dated file entry in Romero's handwriting docu-

On June 17, 1989, Parole Agent Mark Stockton conducted a home visit with Ruzicka, during which Ruzicka admitted to having used cocaine the previous night. Stockton searched Ruzicka's residence and discovered a handgun, ammunition, a knife with blade exceeding two inches in length, a baggie containing marijuana, and a plastic container housing an unspecified quantity of cocaine. Ruzicka was arrested; his parole was thereafter revoked on or about June 27, 1989.

Ruzicka filed a petition for habeas corpus relief in the Kern County Superior Court. The original petition was erroneously directed to the Sheriff of Kern County, so Ruzicka filed an amended petition, naming as the respondent the director of the DoC.

The points and authorities filed with the original and first amended petition claimed that Ruzicka's parole term had been impermissibly extended by retroactive application of a 1988 amendment to section 3001, subdivision (a). After an order to show cause issued and the DoC filed its return to the first amended petition, Ruzicka filed a denial alleging that he had never been notified of the BPT's decision to retain him on parole or that he had a right to appeal that decision. Because the denial raised new contentions, the court ordered that it would serve as a second amended petition. The DoC filed another return. Ruzicka submitted a declaration stating he was never notified in writing that the BPT had retained him on parole and had never seen the BPT's written determination until a copy was attached to the return to order to show cause filed in response to the first amended petition.

The court granted the petition:

"The Board of Prison Terms['] failure to give petitioner written notice of its decision and the reasons to retain him on parole deprived the petitioner of due process and rendered ineffective the board's parole retention decision."

The court cited *In re Nesper, supra,* 217 Cal.App.3d 872, as authority.

The DoC appeals from the order granting the petition.[3]

## DISCUSSION

Before reaching the issues raised by this appeal we will briefly review the relevant statutes.

---

menting the call. The file entry itself was not offered. Ruzicka objected to Stockton's declaration below as "double hearsay." No ruling on the objection appears in the record.

[3]During the pendency of the appeal, the DoC moved that we take judicial notice of certain pleadings and exhibits filed in *In re Nesper, supra,* 217 Cal.App.3d 872. Because both parties have referred to some of those documents in their briefs, we grant the motion.

Section 3000, subdivision (a) provides that "[a]t the expiration of a term of imprisonment . . . imposed pursuant to Section 1170 . . . the inmate shall be released on parole for a period not exceeding three years, unless the [BPT] for good cause waives parole and discharges the inmate from custody of the department."

Prior to January 1, 1979, section 3000, subdivision (a) provided for a maximum term of parole "not exceeding one year." (Stats. 1977, ch. 2, § 5, pp. 9-10.)

At the same time that the maximum parole period under subdivision (a) was extended to "a period not exceeding three years," section 3001 was added to the Penal Code. (Stats. 1978, ch. 582, § 2, p. 2004.) Subdivision (a) of section 3001, at all relevant times,[4] provided:

"Notwithstanding any other provision of law, when any person referred to in subdivision (a) of Section 3000 has been released on parole from the state prison, and has been on parole continuously for one year since release from confinement, the [BPT] shall, within 30 days, discharge such person from parole, unless the [BPT], for good cause, determines that such person will be retained on parole. The [BPT] shall make a written record of its determination and transmit a copy thereof to the parolee."

Section 3001, subdivision (a) thus imposes two obligations on the BPT. First, it must, within a specified time frame, discharge the parolee or determine to retain him on parole. Second, it must make a written record of the determination and transmit a copy to the parolee.

In their briefs the parties devoted much discussion to the consequences flowing from the BPT's failure to timely perform its first obligation under section 3001, subdivision (a); i.e., what happens when the BPT takes no action within the one-year and thirty-day period described in the statute? Ruzicka relies on *In re Nesper, supra*, 217 Cal.App.3d 872, in which the court opined that "when a person has been actually free of confinement for a continuous year, that person's parole terminates unless the board acts to retain the person on parole." (*Id.* at p. 876.) Appellant strenuously argues that *Nesper* was wrongly decided and asks us not to follow it. Instead, appellant relies on language in *People* v. *Lara* (1988) 206 Cal.App.3d 1297 [254 Cal.Rptr. 360] and *In re Welch* (1987) 190 Cal.App.3d 407 [235 Cal.Rptr. 470] to the effect that section 3001 does not automatically entitle a parolee to discharge from parole after one year absent affirmative BPT

---

[4]Section 3001 was amended effective September 26, 1988; by its terms, the revision was only to be applied prospectively. (§ 3001, subd. (d).)

action. (*Lara, supra,* 206 Cal.App.3d at p. 1303; *Welch, supra,* 190 Cal.App.3d at p. 411.)

While the question is interesting, we do not see how it is material in this case. Ruzicka was paroled on October 1, 1987. On October 24, 1988, within the statutory period, the BPT determined to retain Ruzicka on parole. Thus, BPT fully complied with its first obligation under section 3001, subdivision (a). What it did not do is comply with its obligation to transmit a copy of the written determination to Ruzicka. The question of what consequences flow from that failure is necessarily the cynosure of our review. We decline the parties' invitation to contribute to the ongoing discussion of an apparently unsettled issue not raised by the facts of this case.

I. *Failure to Give Notice of the BPT's Determination Was a Denial of Due Process.*

In *Nesper,* the court applied the California Constitution's due process requirements to the statutory procedure for discharge from parole. There, as here, the BPT failed to give the parolee a copy of the written determination to retain him on parole. The court found a denial of due process.

"Petitioner here was not accorded the most basic procedural protection, i.e., notice of the decision of the board. Without that notice, he could not participate in any way in the decision process including the exercise of his right to appeal." (217 Cal.App.3d at p. 877.)

We agree with the *Nesper* court's analysis and conclusion on this issue. Section 3001, subdivision (a) is unambiguous in its notice requirements: "The board shall make a written record of its determination and transmit a copy thereof to the parolee." California Code of Regulations, title 15, section 2535, subdivision (c) further requires that "The parolee shall receive a copy of the board's decision, including the reasons for a decision not to discharge the parolee." The DoC's parole officer manual (the DoC's own regulations regarding parole) requires that the parolee be provided with the parole agent's report, the BPT's decision, and an appeal form within 10 days of a decision to retain him on parole.

A parolee is not entitled to a personal appearance while the BPT is deciding whether to retain him on parole. (Cal. Code Regs., tit. 15, § 2535, subd. (c).) The parolee's only right is to appeal from an adverse decision. The appeal document must state "specific grounds." (Cal. Code Regs., tit. 15, § 2052, subd. (a)(1).) Unless the parolee is given a copy of the written

determination, he will not know the reasons for retention on parole and will be unable to comply with the appeal requirements.

■ The DoC argues that *Nesper*'s finding of a due process violation resulting from lack of written notice should not apply here because Ruzicka purportedly had some other form of notice of the BPT's decision. The contention ignores the lack of any evidence that Ruzicka was notified of the *reasons* for his retention. It also ignores the specious quality of the only evidence suggesting notice, the declaration of Mark Stockton, wherein Stockton simply states that he reviewed another parole agent's written notes of a telephone conversation with Ruzicka. As previously noted, Ruzicka objected below to consideration of this evidence as double hearsay, and there is no indication of a ruling. (See fn. 2, *ante.*) Finally, the contention ignores the implications of the procedural history herein. Ruzicka's first two petitions for habeas corpus did not rest on either a failure to conduct a discharge review hearing or a failure to provide notice. Instead, they were based on the (mistaken) assumption that the 1988 amendment to section 3001, subdivision (a) had been applied ex post facto to extend his parole from one year to two. Implicit in this is that Ruzicka, in fact, had no notice a discharge review hearing had been held pursuant to the earlier version of section 3001.

We conclude that Ruzicka was denied due process by the BPT's failure to transmit a copy of its written record of the retention determination to him.

II. *The Denial of Due Process Was Not Harmless Beyond a Reasonable Doubt.*

The DoC argues that even if there was a due process violation, it was reviewable under the *Chapman* "harmless beyond a reasonable doubt" standard (*Chapman* v. *California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R.3d 1065]), and that it was, in fact, harmless beyond a reasonable doubt.

The DoC is correct in contending that *Chapman* defines the appropriate standard of review. (*In re La Croix* (1974) 12 Cal.3d 146, 154 [115 Cal.Rptr. 344, 524 P.2d 816].) Ruzicka does not propose an alternate standard.

The effective results of the failure to provide notice, as previously stated, were that (1) Ruzicka apparently believed he was retained on parole through the amendment to section 3001; and (2) even if he knew his retention was via a discharge review hearing, he was deprived of substantive information

regarding the reasons for retention and procedural information regarding his right to appeal.

Was he prejudiced? Both his parole agent and the agent's unit supervisor recommended that Ruzicka be discharged from parole after one year. The written recommendation stated that Ruzicka "has been in full compliance with anti-narcotic testing. . . . [¶] [His] adjustment has been excellent. He has complied with his special conditions and has maintained a positive attitude about his current responsibilities and his future. [¶] . . . He has made a positive adjustment and appears to have well thought out plans for his future. It is doubtful that he will be involved with the criminal justice system in the future as his experience has made a significant impression."

The BPT retained Ruzicka on parole despite this recommendation. The only grounds for retention identified by the BPT (but not disclosed to Ruzicka) were that his offense involved a weapon (Cal. Code Regs., tit. 15, § 2535, subd. (d)(1)) and that he was "in special need of continued supervision for the safety of the parolee or of the public" (Cal. Code Regs., tit. 15, § 2535, subd. (d)(5)). Given the strength of his parole officer's recommendation, we cannot conclude "beyond a reasonable doubt" that had Ruzicka been given a fair opportunity to appeal the discharge review hearing, he would not have obtained a reversal.

### III. The Trial Court's Remedy for the Due Process Violation Was Overbroad.

■ Having concluded that the lower court properly found a due process violation which cannot be dismissed as harmless beyond a reasonable doubt, we must address one remaining question: Was the remedy proper? The lower court followed *Nesper* in finding the failure to provide posthearing notice "rendered ineffective the board's parole retention decision," thus effectively holding that Ruzicka was released from parole by operation of law on or about October 31, 1988. Implicit in the finding is that the subsequent parole search and revocation of parole were illegal as well.

The DoC maintains this remedy was overbroad.

"[T]he Board should not have been prohibited from reconsidering Ruzicka's suitability for early discharge from parole when the superior court found that he had been denied due process during the parole retention decision-making process. Contrary to *Nesper*, the most that the superior court should have afforded Ruzicka was an entitlement to reconsideration of his suitability for early discharge from parole with appropriate notice of the decision and his right to file an administrative appeal."

Ruzicka predictably disagrees.

"In the instant case . . . there is no remedy short of discharge which could provide respondent with the due process rights denied him by the BPT. Had he prevailed on an appeal of the BPT's October, 1988 decision to retain him on parole, he would not have been in violation of parole conditions in June, 1989. In respondent's case, as in Mr. Nesper's case, the Department of Corrections *cannot simply 'start over' and proceed in accordance with due process of law.* In this case, the superior court was correct in ruling that respondent be discharged from custody and from further parole restrictions."

Ruzicka is correct that *if* he had prevailed on an appeal, he would not have been subject to subsequent parole proceedings. Apparently, however, he wants us to assume he *would* have prevailed on an administrative appeal. Ruzicka asks too much. Presumably, the question on an administrative appeal would be whether the determination to retain Ruzicka on parole was supported by "good cause." (§ 3001, subd. (a).) On the record presented here we cannot say, as a matter of law, that the determination was not supported by good cause and that Ruzicka would have prevailed on appeal.

Why, then, should the postdetermination procedural violation invalidate the determination? The *Nesper* court announced that result but neither cited any authority nor discussed any reasons supporting it. Ruzicka merely relies on *Nesper* but offers no persuasive argument as to why we should nullify the BPT's decision simply because it failed to comply with a postdecision procedural requirement.

Appellant points to *In re Bowers* (1974) 40 Cal.App.3d 359 [114 Cal.Rptr. 665]. There, Bowers was paroled and shortly thereafter was arrested and charged with a felony. No prerevocation hearing was held (*Morrissey* v. *Brewer* (1972) 408 U.S. 471 [33 L.Ed.2d 484, 92 S.Ct. 2593]), and Bowers was returned to prison for a revocation hearing. Before the hearing he filed his petition for habeas corpus relief, asserting the denial of a *Morrissey* hearing. Parole was revoked before the habeas petition was heard. The superior court thereafter granted the petition, ordering that the charged violation be stricken and that the Adult Authority be "barred from reinstituting the charged violation . . . ." (40 Cal.App.3d at p. 361.)

The People appealed, and the appellate court reversed. It found that while Bowers was entitled to *some* relief due to the failure to hold a *Morrissey* hearing, the trial court "went too far in ordering the Adult Authority to release [Bowers] from prison and restore him to parole and in barring the

Adult Authority from further consideration of the alleged incident forming the basis for revocation of [Bowers'] parole." (40 Cal.App.3d at p. 362.)

"The power to grant and revoke parole is vested in the Department of Corrections, not the courts. [Citations.] The proper function of the courts in respect to parole and revocation of parole is simply to ensure that the prisoner is accorded due process. [Citations.] Thus, where the Department of Corrections has failed to accord a prisoner due process of law in revoking his parole, the relief to which the prisoner is entitled on habeas corpus is not an order forever barring the Department of Corrections from proceeding further, but, rather, an order directing the Department of Corrections to vacate its order of revocation and thereafter to proceed in accordance with due process of law." (40 Cal.App.3d at p. 362.)

The *Bowers* rationale is applicable here and we adopt it. The denial of Ruzicka's due process rights can be remedied by an order directing the DoC to transmit a copy of the written determination record to Ruzicka and afford him an opportunity to pursue his right of appeal.

## DISPOSITION

The order granting Ruzicka's petition for writ of habeas corpus is modified to read as follows:

"Petitioner's petition for writ of habeas corpus is granted. The Board of Prison Terms' failure to give petitioner written notice of its decision and the reasons to retain him on parole deprived the petitioner of due process. Respondent is directed to transmit to petitioner, on or before July 31, 1991, a copy of the Discharge Review Report Form (CDC 1632), BPT Decision Form (CDC 1130), and Application for Appeal Form (BPT 1040). Petitioner shall thereafter have 90 days in which to file an appeal pursuant to California Code of Regulations, title 15, sections 2050-2056."

As so modified the order is affirmed.

Best, P. J., and Martin, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 1, 1991. Mosk, J., Broussard, J., and Kennard, J., were of the opinion that the petition should be granted.