[No. B229584. Second Dist., Div. Five. July 19, 2011.]

In re PARIS P. STONE on Habeas Corpus.

COUNSEL

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Julie A. Malone and Nikhil Cooper, Deputy Attorneys General, for Appellant California Department of Corrections and Rehabilitation.

Nancy L. Tetreault, under appointment by the Court of Appeal, for Petitioner Paris P. Stone.

## OPINION

**KRIEGLER, J.**—California's Department of Corrections and Rehabilitation (Corrections) appeals from the superior court's order granting Paris P. Stone's petition for writ of habeas corpus and ordering him released forthwith from the custody of Corrections, based on a finding that the Board of Parole Hearings (Board) failed to give Stone written notice of the Board's decision to retain him on parole, thereby rendering the retention illegal and depriving the Board of jurisdiction to later revoke Stone's parole. At the time of the superior court's ruling, Stone had been returned to custody after the Board revoked his parole based on findings that Stone violated his parole terms by associating with prohibited persons and making criminal threats (Pen. Code, § 422)[1] to his wife—the same offense for which he was originally incarcerated.

We granted Corrections's request for an immediate stay and now reverse the superior court's order. As we explain, even assuming the Board violated Stone's constitutional due process rights by failing to give timely written notice of its retention decision, the superior court's remedy was in excess of that authorized by law, which merely required an order to effectuate Stone's opportunity to appeal the Board's retention decision. Moreover, because the Board's retention decision was timely, it maintained parole jurisdiction over Stone, such that it was authorized to revoke his parole.

### STATEMENT OF FACTS AND PROCEDURAL BACKGROUND

On October 2, 2004, Stone was convicted of making criminal threats in violation of section 422 and sentenced to four years in prison. The offense arose out of a domestic dispute at the home of his wife, who had obtained a temporary restraining order against Stone. On April 3, 2008, Stone was

---

[1] All further statutory references are to the Penal Code, unless stated otherwise.

released from prison and placed on parole for a period of three years, making his discharge date April 3, 2011. One of his parole conditions was that he "shall have no contact with the victim [(Stone's wife)] or her family without the approval from [the Division of Adult Parole Operations]."

On March 3, 2009, parole agent Bernadette Caraway recommended that Stone be discharged from parole. The discharge review date was April 3, 2009. If early discharge were granted, the effective discharge date would have been May 3, 2009. However, the "controlling" discharge date was listed as April 3, 2010. On March 9, 2009, the Board rejected the early discharge recommendation and retained Stone on parole, citing his serious criminal history, which included crimes of violence and weapons violations.[2] As discussed in more detail *post*, the superior court found Stone never received written notice of the Board's decision to retain him on parole.

Stone was arrested on May 8, 2009, for violation of parole, based on his wife's complaint to the police that Stone had threatened and harassed her. On May 6, she told the police that Stone had been sending her threatening text messages since May 4, 2009. She showed the police two text messages containing threats such as, "FU I'LL SHOW YOU" and "NO THREAT PROMISE U WILL FEEL THIS ONE I'LL WAIT TO CATCH U OFF GUARD."

On May 13, 2009, Stone acknowledged receipt of the notice of parole revocation rights informing him that the revocation charges had been referred to the Board for hearing and determination. Stone was in custody and present at the parole revocation hearing on June 8, 2009. The Board found Stone had associated with prohibited persons and made criminal threats, based on the testimony of the victim and the evidence of the text messages sent to her. Parole was revoked and Stone was returned to custody for 11 months.

Stone filed the underlying habeas corpus petition on February 19, 2010, in which he claimed the Board failed to give him notice of the decision to retain him on parole, as required by the Board's internal regulations and section 3001.[3] Since the Board failed to transmit the required notice, Stone alleged,

---

[2] The record indicates that Stone's prior convictions, apart from the criminal threats against his wife, were for being a felon in possession of a firearm on July 5, 2000, and for assault with a firearm on April 21, 1992.

[3] The latter statute provides in relevant part that a prisoner who is "released on parole from the state prison, and has been on parole continuously for one year since release from confinement, within 30 days, that person shall be discharged from parole, unless the Department of Corrections recommends to the Board of [Parole Hearings] that the person be retained on parole and the board, for good cause, determines that the person will be retained. . . . The board shall make a written record of its determination and the department shall transmit a copy thereof to the parolee." (§ 3001, subd. (a).)

the retention order was invalid. As a result, Stone was discharged from parole by operation of law on May 3, 2009, and the Board lost jurisdiction to revoke his parole after that discharge date. Thus, when Stone visited his wife on May 4, he was no longer subject to the parole conditions. His wife's "false report" to the police about his harassment and threats, therefore, did not provide a basis for revoking parole and imposing a period of incarceration. Among other remedies, Stone sought his immediate release from custody.

On April 26, 2010, the superior court ordered Corrections to file an informal letter response to Stone's habeas corpus petition, addressing "whether petitioner was effectively discharged from parole by operation of law as of May 3, 2009." After the parties filed those responses, the court issued an order to show cause why the petition should not be granted. Citing *In re Nesper* (1990) 217 Cal.App.3d 872 [266 Cal.Rptr. 113] (*Nesper*), the court requested the parties to address whether Stone ever received notice of the Board's action to retain him on parole.

In the return to the order to show cause, Corrections presented the declaration of Floyd Nakashima, Stone's parole agent from March to June 2009. Agent Nakashima declared that it was his "practice and procedure to provide parolees with written notice of their retention decisions in-person." He met with Stone on March 17, 2009, and it would have been his practice to give him the written notice at that time. He also would have met with him twice a month for regular parole meetings. The agent never told Stone he had been discharged from parole.

On November 8, 2010, the superior court issued its order granting Stone's habeas corpus petition. The court found no evidence that the Board or a parole agent provided Stone with actual written notice of the Board's retention decision and rejection of early discharge. The court found Agent Nakashima's declaration as to his practice and procedure unresponsive and unconvincing. Relying on *Nesper*, the court found the failure to provide notice of the Board's retention decision violated Stone's right to due process. That violation could not be deemed harmless beyond a reasonable doubt, the court reasoned, because Stone waited until the day after he would have been discharged (absent that order) before visiting his wife. That is, the court found Stone suffered prejudice in the constitutional sense because he apparently believed he had been discharged on May 3 and would not have made the visit or sent the threatening text messages if the Board had provided notice of his retention. Pursuant to *Nesper*, the court concluded the Board's retention decision was ineffective, with the result that Stone was discharged

by operation of law on May 3, and the Board had no jurisdiction to revoke his parole on June 8, 2009. Accordingly, it ordered Stone discharged from parole forthwith.

## DISCUSSION

■ In its timely appeal, Corrections makes alternative arguments why the habeas corpus petition should not have been granted: (1) the evidence established that Stone did in fact receive adequate notice of the Board's retention decision or (2) the superior court's remedy was improper because a failure to provide notice does not invalidate the retention decision; the Board retained jurisdiction over Stone, and it was authorized to revoke his parole. We agree with the latter contention and need not discuss the first. The notice requirement is intended to effectuate the parolee's right to appeal the retention decision and, therefore, its denial will not typically support the extraordinary relief of ordering a parolee's immediate release.

■ In order to place the parties' arguments in the proper context, we summarize the procedures mandated for parole retention and discharge. As we have noted, section 3001, subdivision (a), provides that a prisoner who has been on parole continuously for one year shall be discharged within 30 days, "unless the Department of Corrections recommends to the Board of [Parole Hearings] that the person be retained on parole and the board, for good cause, determines that the person will be retained. . . . The board shall make a written record of its determination and the department shall transmit a copy thereof to the parolee." In effect, section 3001, subdivision (a), mandates discharge one month after the first year of continuous parole, unless the Board finds good cause to retain the parolee. (*In re Carr* (1995) 38 Cal.App.4th 209, 213 [45 Cal.Rptr.2d 34].)

California Code of Regulations (Regulations), title 15, section 2535, subdivision (a) adds that in connection with the discharge review, "the Board shall consider the parolee's adjustment in prison and on parole and any other information relevant to determining whether the parolee should be discharged or retained under parole supervision." For persons subject to three years of parole, such as Stone, the discharge review "shall be performed during the thirteenth month of continuous parole." (*Id.*, subd. (b)(1).) With regard to prisoner rights, the Regulations specify that "[t]he prisoner does not have a right to a personal appearance during the review. The parolee shall receive a copy of the board's decision, including the reasons for a decision not to discharge the parolee. The parolee may appeal a refusal to discharge . . . . [¶]

If the Board does not discharge the parolee, the Board shall review the case annually thereafter until discharge. Subsequent reviews shall be performed as provided in this section." (*Id.*, subd. (c); see *In re Carr, supra,* 38 Cal.App.4th at p. 213 ["When a parolee is *retained* after this 'discharge review,' the Regulations require service of a written copy of the [Board's] decision and permit the parolee to appeal."].)

██ Contrary to the superior court's ruling, the statutory and regulatory framework for discharge and retention decisions does not condition the validity of a timely retention decision on providing the parolee with notice of that decision. Here, it is undisputed that the Board timely ordered Stone's retention. Stone "had no right to participate in the initial [Board] proceeding to determine whether his parole would be extended. Thus, that decision and appellant's resulting parole status were valid and effective unless set aside on administrative appeal of the determination." (*People v. Jack* (1997) 60 Cal.App.4th 1129, 1133–1134 [70 Cal.Rptr.2d 676] (*Jack*).) As the court explained in *In re Carr, supra,* 38 Cal.App.4th at page 214: "When a parolee is retained after a continuous year on parole, he or she remains subject to the term of parole initially imposed, here three years." Significantly for purposes of this appeal, "if a parolee has been retained on parole after his or her initial discharge review, the [Board] *retains jurisdiction* during the period for which the parolee was initially released unless and until the [Board] discharges the parolee or the maximum parole period has expired without formal extension." (*Id.* at p. 217, italics added.)

Therefore, notwithstanding the lack of notice of retention or Stone's subjective belief concerning his supposed discharge, Stone remained on parole and was subject to revocation. The superior court's reliance on *Nesper, supra,* 217 Cal.App.3d 872 in support of its contrary finding was misplaced. In *Jack,* our colleagues in the First District Court of Appeal reconsidered the prior decision—at least to the extent *Nesper* held the failure to give notice nullified the parole retention decision. (*Jack, supra,* 60 Cal.App.4th at p. 1133.) As the *Jack* court explained, intervening authorities had cast doubt on *Nesper*'s rationale and holding: "*In re Ruzicka* (1991) 230 Cal.App.3d 595 [281 Cal.Rptr. 435] (*Ruzicka*), and *In re Roa* (1991) 1 Cal.App.4th 724 [3 Cal.Rptr.2d 1] (*Roa*), both held that a failure to provide written notice was a violation of due process, but that the appropriate remedy was to allow the parolee to pursue his right to an administrative appeal." (*Jack, supra,* at p. 1133.)

██ We agree that the *Ruzicka-Roa-Jack* line of cases is better reasoned because those decisions not only comport with the statutory and regulatory

framework outlined *ante*, but give proper deference to the role of Corrections in making parole decisions. " 'The power to grant and revoke parole is vested in the Department of Corrections, not the courts. [Citations.] The proper function of the courts in respect to parole and revocation of parole is simply to ensure that the prisoner is accorded due process. . . . Thus, where the Department of Corrections has failed to accord a prisoner due process of law in revoking his parole, the relief to which the prisoner is entitled on habeas corpus is not an order forever barring the Department of Corrections from proceeding further, but, rather, an order directing the Department of Corrections to vacate its order of revocation and thereafter to proceed in accordance with due process of law.' " (*In re Prather* (2010) 50 Cal.4th 238, 254 [112 Cal.Rptr.3d 291, 234 P.3d 541], quoting *In re Bowers* (1974) 40 Cal.App.3d 359, 362 [114 Cal.Rptr. 665]; see also *Jack, supra,* 60 Cal.App.4th at p. 1133, quoting *In re Ruzicka, supra,* 230 Cal.App.3d at p. 604.) Therefore, "the appropriate remedy now is to place appellant in the position he would have been had he been accorded due process." (*Jack, supra,* at p. 1134.) Generally, that will require ordering the Board "to transmit to appellant a copy of the written parole retention record so that he may have the opportunity to pursue his right of appeal." (*Ibid.*; see also *Ruzicka, supra,* at pp. 602–604; *In re Carr, supra,* at p. 219.)

Citing *In re Masoner* (2009) 179 Cal.App.4th 1531, 1540 [102 Cal.Rptr.3d 463], Stone argues on appeal that such a limited remedy would be "meaningless under the circumstances of this case"—those circumstances presumably being the passage of time and the revocation of Stone's parole. The *Masoner* decision, however, concerned the wholly distinguishable situation of the proper remedy to impose when the Court of Appeal vacates the Governor's reversal of the Board's grant of parole. (*Id.* at pp. 1538–1540 [holding reinstatement of the Board's decision, rather than remand to the Governor, is the proper due process remedy].)

The issue before us is not the merits of the Board's retention decision, much less its decision to revoke parole. Rather, we are confronted with the proper remedy to protect Stone's administrative appeal right. The superior court found the Board placed a parole hold on Stone on May 8, 2008. Five days later, Stone acknowledged receipt of the notice of parole revocation rights informing him that the revocation charges had been referred to the Board for hearing and determination. At that point, he had actual knowledge of his parole retention and could have appealed it.[4] Stone cannot rely on his

---

[4] With regard to administrative appellate rights, the Regulations provide: "The parolee shall receive a copy of the discharge review decision, including the reasons for a decision not to discharge the parolee, if applicable. The parolee may appeal any mistake of fact contained in the discharge review report pursuant to the appeals process provided in sections 3084–3084.9. If a mistake of fact is substantiated and that mistake results in a change in the recommendation

own decision to forgo that avenue of potential relief to demonstrate the meaninglessness of the remedy mandated for the due process violation he asserts.

As the *Roa* court explained: "Even if [the parolee] did not receive written notice of his parole extension within the 13-month period, he obviously received notice of the parole hold which was placed on him before the 13 months had elapsed. [¶] Whether [the parolee] should have been notified of his parole extension in writing prior to the expiration of the 13-month period, or a reasonable time thereafter, any failure to notify him in writing of the Board's decision was harmless beyond a reasonable doubt. (See *In re La Croix* (1974) 12 Cal.3d 146, 154 [115 Cal.Rptr. 344, 524 P.2d 816]; *In re Bowers*[, *supra,*] 40 Cal.App.3d [at p.] 362. . . .) Because [the parolee] is aware of his right of administrative appeal, and had every opportunity to pursue that course of action, we need not direct the Board of Prison Terms to give [the parolee] written notice of its decision as the *Ruzicka* court did." (*In re Roa, supra,* 1 Cal.App.4th at p. 728.)

Finally, we disagree with the superior court's finding that Stone suffered constitutional prejudice within the meaning of *Chapman v. California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824], because he apparently believed he had been discharged on May 3 and would not have visited his wife or sent her the threatening text messages if the Board had provided notice of his retention.[5] Such reasoning might have a place if Stone had merely failed to appear at a meeting with his parole agent under the mistaken belief he had been discharged from parole, but Stone's behavior was far more serious and hardly bespeaks good faith or justifiable reliance on the failure to receive notice of retention from the Board. At best, it demonstrated a disturbing and cynical opportunism that our courts are not bound to reward.

In any event, given that the failure to give timely notice did not deprive the Board of parole jurisdiction, the subsequent revocation serves to undercut his due process claim. As the *Carr* court reasoned in analogous circumstances, "once parole was revoked, any right Carr previously may have had to an annual review after his second continuous year on parole became academic. Under the circumstances, therefore, we fail to see how the lack of an annual review in this case denied Carr any due process of law." (*In re Carr, supra,* 38 Cal.App.4th at p. 218; see also *ibid.* [rejecting claim for prejudice under *Chapman*].)

---

to retain on parole, the corrected discharge review report with the recommendation to discharge shall be corrected and submitted to the Board of Parole Hearings with a request to reconsider the decision to retain." (Regs., tit. 15, § 3723 [this section was amended in 2010 after the Board ruled on Stone's discharge].)

[5] On appeal, Stone commendably chose not to press this argument.

## DISPOSITION

The superior court's order granting Stone's petition for habeas corpus is reversed.

Turner, P. J., and Armstrong, J., concurred.

Petitioner's petition for review by the Supreme Court was denied October 26, 2011, S196004. Liu, J., was of the opinion that the petition should be granted.