[Crim. No. 20913. First Dist., Div. One. Nov. 21, 1980.]

In re WINSTON HILLIARD KEMPER on Habeas Corpus.

## COUNSEL

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Karl S. Mayer and Kenneth C. Young, Deputy Attorneys General, for Appellant.

James C. Hooley, Public Defender, Jay B. Gaskill, Assistant Public Defender, and Robert Graham, Deputy Public Defender, for Respondent.

## OPINION

NEWSOM, J.—The People's appeal is from an order granting respondent Winston Hilliard Kemper's petition for release on habeas corpus.

The record shows that respondent pled guilty to a second degree burglary committed August 5, 1977, and was sentenced, on January 5, 1978, to 3 years imprisonment, with 107 days' presentence credit. Kemper, and not the People, appealed from the judgment.

After sentencing, Kemper remained in custody of the Alameda County Sheriff until March 13, 1978: on that day he was delivered to the Department of Corrections at San Quentin.

Meanwhile, Division Three of this court in an opinion filed March 26, 1979, and modified April 25, 1979, ordered Kemper's sentence reduced to 16 months. Since he had as of that time served more than 16 months, on July 12, 1979, he was paroled.[1]

When, following his parole, Kemper failed to report to his parole officer, the latter recommended suspension of parole, and a revocation

---

[1]In San Quentin, Kemper had earned all possible good time/work time conduct credits. (Cf. Pen. Code, § 2931, subd. (b).)

hearing was held September 19, 1979. At that hearing Kemper testified he had never been notified of the relevant requirements, and had twice reported to the parole office, only to be told the officer had no record of his parole. Nevertheless, the parole board made its order suspending Kemper's parole, purportedly as of July 12, 1979—the date of his release on parole from San Quentin.

Pursuant to the board's order Kemper was arrested on September 28, 1979, and, after further hearings, was assessed an additional two months' custody for failure to maintain contact with the parole office. He served the additional time and was again released on November 28, 1979.

Shortly thereafter, Kemper was again arrested—on charges later dismissed—and placed in custody on a parole hold: and, on January 15, 1980, after a hearing, the board added four months to Kemper's sentence for repeated failure to maintain contact with the parole office. The board did not, however, purport to retroactively deny Kemper's credit for the "nonsuspended" parole time he had earned between November 28 and December 12, 1979.

On January 30, as earlier stated, the trial court freed Kemper on habeas corpus, and it is from that ruling that the present appeal is taken.

It will be useful to recapitulate Kemper's periods of postsentence custody in the light of his modified sentence, and his 107 days' presentence credit.

| Period | Days | Nature |
|---|---|---|
| 1/ 5/78 - 3/13/78 | 67 | Alameda County Jail |
| 3/13/78 - 7/12/79 | 486 | San Quentin Prison |
| 9/28/79 - 11/28/79 | 61 | Alameda County Jail |
| 12/12/79 - 1/30/80 | 49 | Alameda County Jail |

Together with the total of 663 days in custody, then, Kemper claims an additional 107 days against a sentence of 16 months.

■ He argues for release, first, on the ground that he served 6 months more than his maximum 16-month sentence, citing Penal Code, section 3057; and, second, he asserts that because he completed a year of nonsuspended parole, under Penal Code section 3001, subdivision (a) he cannot be reincarcerated.

The trial court freed Kemper on the basis of the first argument only. We affirm on the basis of Kemper's second argument, thereby finding no need to consider the first.

Kemper asserts in his second argument that he had already completed a year of nonsuspended parole before the suspension order of September 19, 1979. As of that time, the parole board's jurisdiction had lapsed. This conclusion, of course, requires that his "uninterrupted" year be computed from the date when he *should* have been released had he been sentenced initially in what—in view of the modification to 16 months of his original term—was determined to be the correct manner.

To do so seems fair, for, while in prison, Kemper behaved well, earning all possible conduct credits. His "excess" prison time was an accidental injustice, and to say that it should not count in his favor as nonsuspended parole time seems unreasonably harsh. Such an approach also comports with the rules applicable to construction of penal statutes. As noted in *Bowland* v. *Municipal Court* (1976) 18 Cal.3d 479, at pages 487-488 [134 Cal.Rptr. 630, 556 P.2d 1081]: "Generally, the provisions of a penal statute 'are to be construed according to the fair import of their terms, with a view to effect its objects and to promote justice.' (Pen. Code, § 4; see *People* v. *Fair* (1967) 254 Cal.App.2d 890, 892. . . .) Where the statute is susceptible of two reasonable constructions, however, a defendant is ordinarily entitled to that construction most favorable to him." (See also *People* v. *Boyd* (1979) 24 Cal.3d 285, 295 [155 Cal.Rptr. 367, 594 P.2d 484]; *Hale* v. *Morgan* (1978) 22 Cal.3d 388, 394 [149 Cal.Rptr. 375, 584 P.2d 512]; *People* v. *Ross* (1979) 92 Cal.App.3d 391, 403 [154 Cal.Rptr. 783].)

An analogy supportive of this conclusion is found in Penal Code section 2932, subdivision (d), which credits as nonsuspended parole time the period during which initial release on parole is delayed because of charges of which the prisoner is subsequently found not guilty. No reason is found in logic or justice to distinguish between a delayed initial release on unproved charges, and one caused by subsequent modification of a judgment; both situations involve a delay in release which, retrospectively, was "undeserved."

Accordingly, the date on which Kemper would have been released on parole had he received *ab initio* the sentence ultimately deemed just, will serve as the starting point for our calculation of his parole period. Since the modified sentence of 16 months began on January 5, 1978, it

ought to have extended to May 5, 1979, or a period of 485 days.[2] Moreover, while in San Quentin from March 13, 1978 to July 12, 1979, Kemper earned all possible conduct credits and his 378-day sentence would have been reduced by as much as one-third for such good time credits. ■ And he is also entitled to the same credit for the period spent in sheriff's custody between January 5 and March 13, 1978, since, under Penal Code sections 2931 and 2900, the Department of Corrections has not only the power to reduce the term for time spent in sheriff's custody, but a duty to follow certain procedures—not followed here—if it is to deny such credits. (Pen. Code, § 2932.)[3]

There are other considerations, not least of which is that of equal protection, which support our interpretation of the subject provisions. Since personal liberty is a fundamental interest, any classification under which one is deprived of it must rest upon some compelling state interest. (Cf. *People v. Olivas* (1976) 17 Cal.3d 236, 243 [131 Cal.Rptr. 55, 551 P.2d 375] holding unjustifiable a longer incarceration for youthful, as opposed to adult, offenders). Our Supreme Court has expressly held that the same standard applies to conduct credits, as, for example, in *People v. Saffell* (1979) 25 Cal.3d 223 [157 Cal.Rptr. 897, 599 P.2d 92], where denial of conduct credit for time spent in a hospital was deemed to pass the compelling interest test.[4]

There appears on the record before us no rational state interest in the denial of postsentence conduct credit merely because an inmate is kept in a local rather than state facility. On the contrary, we discern a clear

---

[2] "Month" means "calendar month" rather than some fixed number of days. (Pen. Code, § 7, subd. 13.)

Though the judgment declared the sentence to be "one and one-third (1-1/3) years," the proper statement of the sentence is "16 months." (Pen. Code, §§ 18, 461.) This latter statement is slightly more favorable to Kemper, because his months were shorter than the average months. The People accepted the latter phrasing. In any event, the difference, only one or two days, would not matter in our case. (Kemper's last four months, January 5, 1979, to April 5, 1979, amounted to 120 days. A third of a year is 365/3 days, or 121-2/3 days.)

Kemper also claims that the retroactive decision in *People v. Sage* (1980) 26 Cal.3d 498, 506, 507 and footnote 7 [165 Cal.Rptr. 280, 611 P.2d 874], requires his presentence credit be increased from 107 days to 120 days. Because the extra days are not essential to Kemper's argument, we do not consider the possible effect of the *Sage* decision.

[3] We find no limitation on conduct credits in Penal Code section 2930, which merely deals with the procedure for receiving prison inmates.

[4] (Cf. also *People v. Sage, supra*, 26 Cal.3d at 506, fn. 6, where denial of presentence credit for detainee-felons but not detainee-misdemeanants failed the compelling interest test.)

state interest in awarding such credit, which is part of a legislatively conceived scheme to reward inmates for good behavior and work-performance while serving jail or prison sentences.

It is true that the delay between a prisoner's resentencing and reception in prison is an "emergency" measure (Pen. Code, § 2900) justified by the pragmatic needs of the Department of Corrections, but that factor hardly imports, as argued by the People, a legislative intent to penalize persons thus classified.

Under all relevant circumstances, therefore, Kemper was entitled to a one-third reduction in his "net" 378-day sentence, in which case he would have been entitled to release on parole 252 days after January 5, 1978, or September 14, 1978. If Kemper's parole was not suspended prior to September 14, 1979, the parole board lost jurisdiction. In fact, Kemper's parole officer did recommend suspension on September 7, 1979, and the board *suspended* his parole on September 19, 1979, purporting to make such suspension retroactive to July 12 presumably because he had not reported since his release date.

Penal Code section 3000, subdivision (d), provides for a tolling of the one-year parole period for "time during which parole is suspended because the prisoner has absconded or has been returned to custody as a parole violator." Such language, however, gives the *parole board*, with its powers of suspension, the authority to do so: tolling does not result from the parole officer's mere recommendation. Thus, respondent was entitled to release, and the parole board lost jurisdiction pursuant to section 3000, as herein interpreted and applied to the facts of the present case, before Kemper's parole was suspended. His subsequent reincarceration exceeded the board's authority.

Affirmed.

Racanelli, P. J., and Elkington, J., concurred.