[No. E005291. Fourth Dist., Div. Two. Nov. 28, 1988.]

THE PEOPLE, Plaintiff and Appellant, v.
RAYMOND LARA, Defendant and Respondent.

**COUNSEL**

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Robert B. Shaw and Keith I. Motley, Deputy Attorneys General, for Plaintiff and Appellant.

Deborah J. Mohr-Walker, under appointment by the Court of Appeal, for Defendant and Respondent.

## OPINION

**CAMPBELL, P. J.**—The People's appeal is from an order granting respondent Lara's petition for release on habeas corpus.

### FACTS

In 1983, respondent Lara was sentenced to state prison for a term of five years for a violation of Health and Safety Code section 11352. Originally, this sentence had been augmented by a two-year enhancement imposed pursuant to section 12022.1 of the Penal Code.[1] On January 28, 1987, however, the trial court struck the two-year enhancement and reduced respondent's sentence to just five years in accordance with the sentencing rule announced by the Supreme Court in *People* v. *Overstreet* (1986) 42 Cal.3d 891 [231 Cal.Rptr. 213, 726 P.2d 1288]. Upon a recalculation of the actual term to be served by respondent, the Department of Corrections concluded that respondent had served an excess prison term of 329 days.[2] Respondent was forthwith paroled on February 19, 1987, and received a parole term of three years.

In September 1987, a hold was placed on respondent's parole for alleged parole violations. The Board of Prison Terms held a hearing on the alleged violations in October 1987. At the conclusion of the hearing, the board determined to revoke respondent's parole and return him to custody for 12 months.

In November 1987, respondent filed a petition with the superior court for a writ of habeas corpus.[3] Based almost exclusively on *In re Kemper* (1980) 112 Cal.App.3d 434 [169 Cal.Rptr. 513], respondent's petition asserted that respondent's parole term had been "automatically" concluded prior to the parole revocation hearing—and that the Board of Prison Terms was thus without jurisdiction to revoke respondent's parole and re-commit him to custody. The trial court issued an order to show cause on the petition. The

---

[1] Unless otherwise indicated, all statutory section-number citations refer to the Penal Code.

[2] Respondent does not contest this calculation.

[3] Respondent appears to have filed two such petitions in the trial court. However, inasmuch as respondent himself-elected to consolidate his petitions in the trial court and all proceedings in this matter have been undertaken as if there were only one petition, we treat this appeal as coming before us from a decision rendered on but one petition.

People's return to the order was based in large part on *In re Welch* (1987) 190 Cal.App.3d 407 [235 Cal.Rptr. 470] and questioned the applicability of the *Kemper* rationale to the parole terms at issue in this case.

The trial court conducted a hearing on the petition on February 26, 1988. At the conclusion of the hearing, the court indicated that it would deny the petition. On March 1, 1988, the court's minute order on the petition was actually entered in the court's records as follows:

"Relief is denied.

"*Later*: Court vacates its order denying petition. Ruling is reconsidered based on In Re: Charles David Allison[,] 88DAR2273[.] Filed 2-22-88. Petitioner's request to be released from custody & discharged from Parole is hearby granted."

On appeal, the People raise two basic contentions: (1) The trial court lacked jurisdiction to reconsider its ruling on the petition once it had denied the relief being sought; and, (2) the trial court's ultimate ruling was in error in that respondent had properly still been on parole and subject to a parole revocation at the time of the parole revocation hearing. As is set forth in greater detail below, we reject the People's first contention but agree with its second contention.

DISCUSSION

I

THE TRIAL COURT'S AUTHORITY TO RECONSIDER ITS RULING

■ As the People readily concede, a court is not precluded from revising an order until it has been reduced to writing and entered in the minutes of the court. (*Miller* v. *Stein* (1956) 145 Cal.App.2d 381, 385 [302 P.2d 403].) The record before us clearly discloses that the trial court's ruling on respondent's petition was not entered in the permanent minutes until March 1, 1988, some four days following the hearing on the matter, and that this ruling was in respondent's favor. There is nothing in the record to suggest that the initial ruling, orally announced by the trial court at the hearing, was ever entered in the minutes prior to the March 1, 1988, entry. Further, there is nothing in the record to suggest that the use of the words "*Later*" and "vacates its order" to preface the trial court's re-evaluation of the petition's merits in the written minute order implies a post-entry addition to that minute order itself. Rather, the entire record is consistent with the trial court's simply having appended a revision to the "rough minutes"

before those minutes were formally and permanently entered into the court's records. This is entirely within the trial court's jurisdictional authority. (*Ibid.*; see 7 Witkin, Cal. Procedure (3d ed. 1985) Judgment, §§ 56-57, pp. 492-494.)

## II

### RESPONDENT'S PAROLE STATUS

The People's other contention on appeal reaches the actual merits of respondent's petition for release from custody.[4]

The parties are in agreement, or at least do not dispute, that respondent *should* have been released from state prison on March 27, 1986, some 329 days prior to his actual release date of February 19, 1987. ■ This March 27, 1986 recalculated release date is the date from which all further calculations must be made in determining the period of time during which the Board of Prison Terms continued to exercise parole jurisdiction over respondent. (*In re Kemper, supra,* 112 Cal.App.3d at p. 438; *In re Welch, supra,* 190 Cal.App.3d at p. 410.)

It is also undisputed that respondent's three-year parole term should be deemed to run from the recalculated release date and that respondent should be credited with the 329 "excess" days as nonsuspended parole time leading to his ultimate discharge from parole.

■ What *is* in dispute are the answers to the following two interrelated questions: (1) Does section 3001, subdivision (a), automatically terminate a parole term upon the passage of one year and thirty days from a prison release date, absent intervening action by the Board of Prison Terms? And, (2) if section 3001, subdivision (a), does so automatically terminate a parole term, should respondent's 329-day credit be applied to the beginning of his

---

[4] Actually, the People also contended that the trial court erred in reconsidering its ruling without allowing comment or argument by counsel concerning the basis of that reconsideration, *In re Allison* (Cal.App.). The *Allison* opinion was ordered "depublished" by minute order of the Supreme Court on May 19, 1988. Inasmuch as depublished opinions "shall not be cited or relied on by a court or a party" (Cal. Rules of Court, rule 977(a)), any issues which might have been raised by the trial court's unilateral consideration of the *Allison* decision have been mooted.

Notwithstanding the depublication of the *Allison* opinion, there is no need to remand this matter to the trial court for a reconsideration of the petition. Both of the parties to this proceeding have already fully briefed and argued the entirety of the relevant decisional and statutory authority on the issues raised on this appeal—both before the trial court and before this court. Further, the record clearly discloses what the trial court's resolution of the issues would have been, absent the initial publication of the *Allison* opinion. The need for judicial economy and efficiency dictates that we resolve the issues now before us.

three-year parole term? If the answers to these questions are affirmative, then the Board of Prison Terms's parole jurisdiction over respondent terminated just 66 days after he was *actually* released from prison (one year and thirty days from the recalculated release date) and the subsequent parole revocation (which was initiated some 200 days following respondent's actual release from prison) was invalid. Unfortunately for respondent, we must answer these questions in the negative.

In pertinent part, section 3001, subdivision (a), provides: "Notwithstanding any other provision of law, when any person referred to in subdivision (a) of Section 3000 has been released on parole from the state prison, *and has been on parole continuously for one year since release from confinement,* the board shall, within 30 days, discharge such person from parole, unless the board, for good cause, determines that such person will be retained on parole." (Italics added.)

It is clear from a fair reading of section 3001, subdivision (a), that that statutory provision does not contemplate the automatic termination of parole terms, under any circumstances. Rather, section 3001, subdivision (a), places a mandatory duty on the Board of Prison Terms to affirmatively act either to continue or to terminate the parole status of parolees who have been *actually free of confinement for a continuous year,* irrespective of when such freedom from imprisonment *should* have occurred. (*In re Welch, supra,* 190 Cal.App.3d at p. 411.) ■ There is no need to give this statute anything other than the plain reading we give it here: "When statutory language is clear and unambiguous, there is no need for construction and courts should not indulge in it." (*People* v. *Overstreet, supra,* 42 Cal.3d at p. 895.)[5] ■ Thus, respondent was on parole and validly subject to the parole jurisdiction of the Board of Prison Terms when his parole was revoked.[6]

---

[5] We also note that our interpretation of section 3001, subdivision (a), is consistent with the legislative policy expressed in section 3000: "The Legislature finds and declares that the period immediately following incarceration is critical to successful reintegration of the offender into society and to positive citizenship. It is in the interest of public safety for the state to provide for the supervision of and surveillance of parolees and to provide educational, vocational, family and personal counseling necessary to assist parolees in the transition between imprisonment and discharge." Any interpretation of section 3001, subdivision (a), which would give the Board of Prison Terms significantly less than one year in which to carry out its duty to render such "reintegration assistance" would be contrary to this express legislative policy.

[6] Respondent's reliance on the *Kemper* rationale (*In re Kemper, supra,* 112 Cal.App.3d 434) is misplaced. As noted in *Welch, supra,* 190 Cal.App.3d 407, *Kemper* dealt with a situation in which the "excess time" credits exceeded the total *possible* term of parole. That is not the case in this instance—nor was it in *Welch.* It is precisely because *Welch* (unlike *Kemper*) dealt with the same statutory parole scheme as is involved in this case that we find *Welch,* rather than *Kemper,* compelling.

Holding, as we do, that section 3001, subdivision (a), does not automatically terminate a parole term, we may dispose of the second disputed parole issue quickly. It was entirely appropriate to apply respondent's 329-day credit to the end of his three-year parole term, thus reducing his parole term by almost one-third. (*In re Welch, supra,* 190 Cal.App.3d at p. 412, citing *In re Jantz* (1984) 162 Cal.App.3d 412 [208 Cal.Rptr. 619].)

### DISPOSITION

We reverse the order of the trial court, dated March 1, 1988, granting respondent's petition for writ of habeas corpus, and remand to the trial court for further proceedings consistent with the views expressed herein.

McDaniel, J., and Dabney, J., concurred.

A petition for a rehearing was denied December 23, 1988.