[No. B221187. Second Dist., Div. Two. July 15, 2010.]

In re NICHOLAS TORRES on Habeas Corpus.

COUNSEL

Randy S. Kravis and Bruce Zucker for Petitioner Nicholas Torres.

Edmund G. Brown, Jr., Attorney General, Julie L. Garland, Assistant Attorney General, Anya M. Binsacca and Amanda Lloyd, Deputy Attorneys General, for Respondent State of California.

OPINION

CHAVEZ, J.—

## INTRODUCTION

Penal Code section 3001, subdivision (a)[1] provides that a person who has been released on parole for five years, and has been on parole continuously for three years since release from confinement, shall be discharged within 30 days, unless it is decided for good cause that the person will be retained on parole.

Nicholas Torres (petitioner) was released to serve a five-year parole term in November 2005. Torres was on parole continuously for three years. In December 2008, during the 30-day review period when the Board of Parole Hearings (Board) was required to determine whether to retain petitioner on

---

[1] All further statutory references are to the Penal Code unless otherwise indicated. Because we refer to section 3001, subdivision (a) multiple times throughout this opinion, we will refer to it as "section 3001(a)" for brevity.

parole, petitioner was returned to custody on a parole violation charge. The Department of Corrections and Rehabilitation (Department) did not recommend that petitioner be retained on parole, and the Board did not retain petitioner on parole, during the 30-day review period.

The Board revoked petitioner's parole in February 2009 after concluding that he had violated a condition of his parole, and retained him on parole in March 2009. Petitioner filed a petition for habeas corpus, arguing that under section 3001(a), his parole term had expired by operation of law in December 2008. Therefore, according to petitioner, the Board had no jurisdiction to revoke his parole in February 2009 and retain him on parole in March 2009. We issued an order to show cause and provided the parties with the opportunity to brief and argue the matter.

We grant the petition. Because petitioner was continuously on parole for three years since release from confinement, pursuant to section 3001(a), the Board was required to retain petitioner on parole during the 30-day review period following the three years of continuous parole. The Board's failure to retain petitioner during this 30-day review period resulted in the expiration of petitioner's parole by operation of law notwithstanding petitioner's return to custody during that period. Because petitioner's parole expired in December 2008, we conclude that the Board did not have jurisdiction to revoke petitioner's parole in February 2009 and retain him on parole in March 2009.

## BACKGROUND

On October 16, 2003, petitioner pled guilty to one count of committing a lewd or lascivious act upon a child (§ 288, subd. (a)). The superior court sentenced him to three years in state prison. On November 22, 2005, petitioner was released to serve a five-year parole term.[2]

In October 2007, petitioner was returned to custody and charged with failing to register as a sex offender. On November 6, 2007, the Board found that petitioner had failed to register as a sex offender, revoked petitioner's parole, and ordered him to serve a term of seven months in custody. Petitioner served the seven months and on April 29, 2008, petitioner was again released on parole.

---

[2] Section 3000, subdivision (b)(1) provides: "At the expiration of . . . a term of imprisonment imposed pursuant to Section 1170 . . . the inmate shall be released on parole for a period not exceeding three years, except that any inmate sentenced for an offense specified in paragraph (3), (4), (5), (6), (11), (16), or (18) of subdivision (c) of Section 667.5 shall be released on parole for a period not exceeding five years . . . ." Committing a lewd or lascivious act upon a child is an offense specified in paragraph (6) of section 667.5, subdivision (c). Thus, petitioner's five-year parole term was proper.

On July 7, 2008, petitioner filed a petition for writ of habeas corpus in the superior court challenging the Board's November 6, 2007 decision revoking his parole. Petitioner argued that the Board violated his right to due process when it denied him the opportunity to call a witness from the Ventura County Sheriff's Department who could testify that petitioner had in fact registered as a sex offender.

On November 18, 2008, the superior court ruled that the Board should have permitted petitioner the opportunity to call the witness who could testify about his compliance with the sex offender registration requirements, and granted his petition for writ of habeas corpus. The superior court vacated the Board's November 6, 2007 decision revoking petitioner's parole and ordered the Board to conduct a new revocation hearing concerning the October 2007 charge within 30 days of the court's order.

On December 11, 2008, Curtis Knecht, a clinician at a center where petitioner was attending sex offender counseling, notified petitioner's parole officer that he had discharged petitioner from sex offender group therapy. According to Knecht, petitioner was not actively participating in therapy and was demonstrating disruptive behavior during therapy. On December 16, 2008, petitioner was returned to custody and charged with failing "to actively participate in his sex offender group therapy as required per his special condition of parole."

On December 17, 2008, the Board postponed the new revocation hearing that was ordered by the superior court on November 18, 2008. According to the Board's minutes, the witness that could testify regarding petitioner's sex offender registration compliance had not been subpoenaed to attend the hearing. On January 6, 2009, the Board held the new revocation hearing and concluded that there was insufficient evidence that petitioner had failed to register as a sex offender in October 2007, and dismissed all allegations to that effect.

On January 14, 2009, petitioner was released from custody pending the Board's findings on the charge that petitioner had violated his parole by failing to participate in mandatory sex offender counseling.

On February 25, 2009, the Board concluded that petitioner had violated a condition of his parole by failing to participate in mandatory sex offender therapy. The Board revoked petitioner's parole and ordered him to return to custody for a period of five months. On March 2, 2009, while petitioner was in custody, the Board determined that there was good cause to retain petitioner on parole. This order was based on a February 19, 2009 recommendation by petitioner's parole agent, a February 19, 2009 concurrence by the

parole officer's unit supervisor, and a February 23, 2009 concurrence by the field administrator. On July 2, 2009, petitioner was released on parole.

Petitioner filed a writ of habeas corpus in the superior court, arguing that his parole expired in December 2008, and thus the Board acted outside its jurisdiction when it revoked his parole in February 2009 and retained him on parole in March 2009. The superior court denied the petition, ruling that petitioner had not been continuously on parole for three years since his initial release from confinement as required by section 3001(a).

## ANALYSIS

### I. *Overview*

The issue presented is whether the Board had jurisdiction to revoke petitioner's parole in February 2009 and retain petitioner on parole in March 2009.

According to petitioner, because he was continuously on parole for three years after his initial release date, the Board was statutorily required to retain him on parole during the 30-day review period following the three years of continuous parole. The Board's failure to retain him on parole during this 30-day review period resulted in the expiration of his parole by operation of law on December 22, 2008, i.e., at the end of the 30-day review period. Thus, petitioner argues, the Board had no jurisdiction to revoke his parole in February 2009 or retain him on parole in March 2009.

According to respondent, petitioner was not continuously on parole for three years after his initial release date because he was returned to custody during the 30-day review period. Thus, according to respondent, petitioner did not meet the requirements of section 3001(a) and the Board was not required to retain him on parole during the 30-day review period. Respondent also argues that even if we conclude petitioner was continuously on parole for three years, the Board's failure to retain him during the 30-day review period did not result in the expiration of his parole by operation of law. Because petitioner's parole did not expire in December 2008, the Board acted within its jurisdiction when it revoked petitioner's parole in February 2009 and retained petitioner on parole in March 2009.

### II. *Relevant authority*

As noted in the introduction, section 3001(a), which governs the early discharge of parolees from parole, provides in relevant part: "[W]hen any person . . . has been released on parole from the state prison for a period not

exceeding five years and has been on parole continuously for three years since release from confinement, the department shall discharge, within 30 days, that person from parole, unless the [Department] recommends to the board that the person be retained on parole and the board, for good cause, determines that the person will be retained."[3]

California Code of Regulations, title 15 (hereafter Regulations), section 2535, subdivision (b)(2), provides that the Board should determine whether to retain or discharge a parolee, i.e., conduct a discharge review, "during the 37th month of continuous parole for parolees subject to a five-year parole period . . . ."

Section 2535, subdivision (b)(4) of the Regulations provides that a "parolee has been on continuous parole if the parolee has not absconded parole supervision or had parole revoked since initial release on parole. A parolee has not been on continuous parole if he/she has been ordered returned to custody for psychiatric attention." (See also Regs., § 2515, subd. (a) [a "parolee has been on continuous parole if he/she has not absconded parole supervision or had parole revoked since initial release on parole"].)

Given this statutory and regulatory background, our analysis turns on answers to the following questions:

(1) Has petitioner been on parole continuously for three years since release from confinement?

(2) If petitioner has been on parole continuously for three years since release from confinement, did the Board's failure to retain him on parole during the 30-day review period after those three years result in an expiration of his parole term by operation of law?

We answer both questions in the affirmative.

III. *Petitioner was on continuous parole for three years*

The three-year period following petitioner's initial release from confinement spanned from November 22, 2005, until November 21, 2008. It is

---

[3] Section 3001(a) also provides that for any person who has received a three-year parole term and "has been on parole continuously for one year since release from confinement, within 30 days, that person shall be discharged from parole, unless the Department of Corrections recommends to the Board of Prison Terms that the person be retained on parole and the board, for good cause, determines that the person will be retained." Unless otherwise specified, when we use the term "parolee" in this decision, we are referring to an individual who has received a five-year parole term.

undisputed that petitioner did not abscond from parole during this three-year period. It is also undisputed that though the Board revoked petitioner's parole on November 6, 2007, this revocation was subsequently nullified by the superior court approximately one year later. Thus, under the plain language of the Regulations, section 2535, subdivision (b)(4), petitioner was continuously on parole for three years since his initial release from confinement because he neither absconded from parole nor had his parole revoked during that three-year period. (§ 2535, subd. (b)(4) [defining "continuous parole" as a period in which a parolee has not absconded from parole or had his parole revoked since his initial release from confinement].)

Respondent maintains that petitioner was not continuously on parole for three years because he was "returned to custody" on December 16, 2008. This return to custody, according to respondent, rendered the three-year parole period after petitioner's release from confinement discontinuous.

■ We are not persuaded by respondent's argument. Under the plain and clear language of the Regulations, section 2535, subdivision (b)(4), a "parolee has been on continuous parole if the parolee has not absconded parole supervision or had parole revoked since initial release on parole." (See also Regs., § 2515.) The only instance in which a "return to custody" renders a parole period discontinuous is when the parolee is returned to custody for psychiatric attention. (§ 2535, subd. (b)(4).) Here, petitioner was returned to custody for a parole violation, and not for psychiatric attention. ■ We decline to expand the scope of the regulation beyond its plain and clear language. (*County of Kern v. State Dept. of Health Care Services* (2009) 180 Cal.App.4th 1504, 1512 [104 Cal.Rptr.3d 43] ["Our task is to discern the agency's intent and give the regulatory language its plain, commonsense meaning. If possible, we must accord meaning to every word and phrase in a regulation, and we must read regulations as a whole so that all of the parts are given effect."].)

Even if we were to adopt respondent's interpretation of section 2535 of the Regulations, petitioner's return to custody on December 16, 2008, would not have rendered the three-year period after petitioner's release from confinement discontinuous because the return to custody occurred during the 30-day discharge review period, i.e., *after* the three-year period had already lapsed. Respondent provides no explanation as to how an event that occurred during the 37th month of parole could affect the continuity of what transpired during the preceding 36 months.

In sum, we conclude that petitioner was continuously on parole for three years since his initial release from confinement. We turn next to the question of whether the Board's failure to retain petitioner on parole during the 30-day review period resulted in an expiration of his parole by operation of law.

IV. *Petitioner's parole expired by operation of law at the end of the 30-day review period*

██ Under the plain language of section 3001(a), the Department must discharge a parolee who has been on parole continuously for three years since his release from confinement *unless* the Department recommends to the Board that the parolee remain on parole *and* the Board determines that there is good cause to retain the parolee. The Department's recommendation and the Board's determination to retain the parolee must occur during the discharge review period, i.e., the 30 days after the three years of continuous parole. (§ 3001(a).) As a 2008 hearing directive issued by the Board to its deputy commissioners confirms, failure to retain a parolee during the 30-day review period following a three-year continuous parole period results in the automatic discharge of the parolee: "All parolees sentenced to determinate terms will automatically discharge early (operation of law) if they serve a period of continuous parole as specified in the Penal Code. The BPH [(Board of Parole Hearings)] may take an action to stop this automatic early discharge (retain-on-parole action) but must do so within a specific time frame. However, this action to stop the automatic early discharge can only be taken upon the recommendation of staff from the Division of Adult Parole Operations (DAPO). This action should be taken during the 30-day period following the statutory period of continuous parole; however, past practice allows for this action to occur no more than 30 days prior to the Discharge Review Date (DRD). Once the BPH acts to retain on parole, the parolee remains on parole for the standard statutory parole period, unless the BPH orders the parolee discharged."

Here, it is undisputed that the Department did not recommend to the Board that petitioner remain on parole during the 30-day review period. It is also undisputed and the Board made no determination that there was good cause to retain petitioner on parole during the 30-day review period. Thus, to quote the Board's hearing directive, petitioner's parole expired by "operation of law" after the end of the 30-day review period following his three years of continuous parole. On that date, i.e., December 22, 2008, the Department was required to discharge petitioner from parole. (See *In re Carr* (1995) 38 Cal.App.4th 209, 214 [45 Cal.Rptr.2d 34] [for parolees released on a three-year parole term: "In our view, section 3001(a), the pertinent Regulations, and the practice of the PHD [(Parole Hearing Division)] as reflected in the OM [(Operations Manual)] indicate that parole for a parolee terminates by operation of law after the 13th month of parole unless the PHD takes action to retain the parolee."].)

Despite the plain language of section 3001(a) and the Board's own hearing directive, respondent cites *In re Welch* (1987) 190 Cal.App.3d 407 [235

Cal.Rptr. 470] (*Welch*) and *People v. Lara* (1988) 206 Cal.App.3d 1297 [254 Cal.Rptr. 360] (*Lara*), in support of its contention that a parolee's term of parole does not expire by operation of law when the Board fails to retain the parolee during the 30-day review. Both cases, however, are inapposite.

In *Welch*, the defendant was in prison for convictions in three separate cases. (*Welch, supra*, 190 Cal.App.3d at p. 409.) While in prison, one of the convictions was reversed. Welch was released on parole for a three-year term in January 1985. Given the reversed conviction, however, Welch should have been released on parole in December 1983. (*Id.* at p. 411.) Welch was taken into custody in June 1985, and his parole was revoked in August of that year. In a petition for writ of habeas corpus, Welch argued that he had been continuously on parole for a year (i.e., from Dec. 1983 until Dec. 1984) and the Board's failure to retain him on parole during the 30-day review period following the one year of continuous parole meant that his parole expired by operation of law at the end of the review period pursuant to section 3001(a). (*Welch*, at p. 411.) The Court of Appeal rejected this argument, holding that the Board's failure to act during the discharge review was excusable because Welch's actual release from incarceration did not correspond to when he should have been released. (*Ibid.*) The Board could not have been expected to retain Welch on parole in December 1984 when the Department had not even released Welch from confinement. (*Ibid.*)

*Lara* involved a similar scenario. In that case, Lara was sentenced to seven years, comprised of five years for a drug violation and two years for an on-bail enhancement. While he was serving his term in prison, the trial court struck the two-year enhancement pursuant to an intervening decision by the Supreme Court. Upon a recalculation of the actual term to be served by Lara, the Department concluded that he had served an excess prison term of 329 days, and that he should have been released on parole on March 27, 1986. Lara, however, was actually paroled on February 19, 1987, for a term of three years. (*Lara, supra*, 206 Cal.App.3d at p. 1299.) In September 1987, a hold was placed on Lara's parole for alleged parole violations. In October 1987, the Board concluded that the allegations were true, revoked Lara's parole, and returned him to custody for a year. (*Ibid.*)

Lara filed a writ of habeas corpus with the superior court, arguing that his parole term had "automatically" terminated on April 27, 1987, i.e., one year 30 days from when he should have been released on parole. (*Lara, supra*, 206 Cal.App.3d at p. 1301.) Thus, according to Lara, the Board acted beyond its jurisdiction when it revoked his parole in October 1987. The Court of Appeal rejected Lara's argument, holding that section 3001(a) "places a mandatory duty on the Board of Prison Terms to affirmatively act either to continue or to terminate the parole status of parolees who have been *actually free of*

*confinement for a continuous year*, irrespective of when such freedom from imprisonment *should* have occurred. [Citation.]" (*Lara*, at p. 1302.) Thus, because Lara was actually free of confinement on February 19, 1987, the Board acted within its jurisdiction when it revoked his parole in October 1987. (*Ibid.*)

In both *Welch* and *Lara*, the parolees did not serve the requisite continuous period of parole outside of prison. Thus, the Board in each case did not have an affirmative duty to retain them on parole during the 30-day review period following the requisite continuous parole period. (See *In re Nesper* (1990) 217 Cal.App.3d 872, 876 [266 Cal.Rptr. 113], distinguished on an unrelated point in *In re Roa* (1991) 1 Cal.App.4th 724, 727 [3 Cal.Rptr.2d 1] ["We think it an unreasonable interpretation of [section 3001(a)] to impose a duty on the BPT to retain a prisoner on parole when that prisoner is not *actually* on parole but is still in prison. A statutory construction that leads to absurd consequences should be avoided."].)

■ In stark contrast to the parolees in *Welch* and *Lara*, petitioner in this case served the requisite continuous period of parole *outside* of prison. This distinction is critical because, as the "Legislature found and declared '. . . the period *immediately* following incarceration is critical to successful reintegration of the offender into society and to positive citizenship . . . .' " (*In re Carr*, *supra*, 38 Cal.App.4th at p. 215 [discussing Legislative intent behind § 3001].) Thus, "[t]o encourage a parolee to properly and appropriately reenter, acclimate to, and behave in society during the first [three] critical year[s] after release from prison, the Legislature in section 3001(a) provides a compelling incentive: mandatory discharge by operation of law unless the [Board] can establish good cause to retain them on parole." (38 Cal.App.4th at p. 215.)

Relying on *Welch* and *Lara*, respondent further argues that this particular case presents a unique circumstance because the Board did not have a reasonable opportunity to act during the 30-day discharge review period, due to the timing of the superior court's decision vacating the Board's earlier order revoking petitioner's parole. Respondent maintains that the decision to retain a parolee on parole is time intensive insofar as it takes four separate approvals from two separate entities, including the Department's parole agent, unit supervisor, and field administrator and the Board.

■ We reject this argument. The 30-day discharge review period began on November 22, 2008, in this case. The superior court vacated the November 6, 2007 parole revocation order on November 18, 2008, which was several days before the 30-day discharge review period began. Section 3001(a) provides that the Department must make a recommendation and the Board

must make a determination to retain a parolee within a 30-day period, thus contemplating that a 30-day period is a sufficient amount of time to complete such matters. Here, the Department and Board had more than 30 days to decide whether petitioner should be retained on parole.[4]

Respondent also argues that the Department and Board did not have a reasonable opportunity to act in this instance because petitioner was arrested for another parole violation on December 16, 2009, a date that fell within the 30-day discharge review period. The Department and Board, according to respondent, could not have been expected to address both petitioner's parole revocation proceedings and the question of whether he should be retained on parole at the same time. This argument falls flat, however, in light of the Board's own operating procedures which specifically address a situation where, as here, a parolee is returned to custody and parole revocation proceedings begin during the 30-day review period. The procedures provide: "If, while reviewing documents during any step in the revocation process, a DC [(Deputy Commissioner)] notices that a parolee is likely to discharge before the revocation proceeding is complete but will not reach his/her MCDD [(Maximum Controlling Discharge Date)], the DC shall act to 'extend parole pending revocation proceedings.' . . . [¶] The DC must take an independent action in order to retain jurisdiction and 'extend parole pending revocation proceedings' in addition to any other action taken."

Likewise, when a parolee who is subject to early discharge has been charged with a parole violation, section 2637 of the Regulations provides the Board's central office with the authority to extend the parole term so that the Board can "retain jurisdiction" over the parolee while it determines whether there is good cause to retain him on parole. (Regs., § 2637, subd. (b)(12) [central office may extend a parole period pending a revocation hearing when necessary "to retain jurisdiction when a parolee charged with a parole violation will discharge prior to a revocation hearing"].) Section 2637 "recognizes that there are circumstances in which parole will terminate by operation of law unless the [Board] takes action. Thus, . . . if one is charged with a parole violation, arrested during this 30-day [discharge review] period but before the period expires, then parole will terminate by operation of law

---

[4] We note that it took approximately two weeks from start to finish for the Department to recommend and the Board to retain petitioner in early 2009. On February 19, 2009, petitioner's parole officer recommended that petitioner be retained on parole. The officer's unit supervisor concurred with the recommendation on the same day, and the field administrator concurred on February 23, 2009. The Department forwarded the recommendation to the Board and the Board retained petitioner on parole on March 2, 2009. If the Department and Board took two weeks to complete the process in early 2009, it is reasonable to assume that they would have taken the same amount of time in late 2008.

unless the [Board] acts." (*In re Carr, supra*, 38 Cal.App.4th at p. 217 [discussing Regs., former § 3901.21.4, subd. (b)(12), the predecessor to Regs., § 2637, subd. (b)(12)].)

■ In sum, we conclude that petitioner was continuously on parole for three years since his initial release from confinement, that petitioner's parole expired by operation of law at the end of the 30-day discharge period following this continuous period of parole, and that the Board acted outside of its jurisdiction when it revoked petitioner's parole in February 2009 and retained him on parole in March 2009.

## DISPOSITION

The petition is granted.

Doi Todd, Acting P. J., and Ashmann-Gerst, J., concurred.