Filed 8/8/14  P. v. De La Cruz CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> JACKIE MARIE DE LA CRUZ, <br><br> Defendant and Appellant. | B249650 <br><br> (Los Angeles County <br> Super. Ct. No. BA392691) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Upinder S. Kalra, Judge.  Affirmed as modified with directions.

Mark J. Shusted, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Paul M. Roadarmel, Jr., and Stephanie A. Miyoshi, Deputy Attorneys General, for Plaintiff and Respondent.

# I. INTRODUCTION

A jury convicted defendant, Jackie Marie De La Cruz, of assault with a deadly weapon, a knife, in violation of Penal Code section 245, subdivision (a)(1).[1]  Defendant admitted she served a prior separate prison term within the meaning of section 667.5, subdivision (b).  The trial court struck the prior conviction allegation pursuant to section 1385, subdivision (a).  Defendant was sentenced to two years in state prison.  We affirm the judgment.

# II. THE EVIDENCE

On January 9, 2012, defendant stabbed the victim, Edward or Edgar Rodriguez, in the face with a steak knife.  Defendant was standing on the sidewalk at the entranceway to Mr. Rodriguez's apartment building.  She was partially blocking the walkway.  Mr. Rodriguez had to walk around defendant to reach the entrance.  As he did so, defendant reached into a shopping cart and pulled out a steak knife.  Defendant raised her right arm to shoulder level, swung back with her right hand and stabbed Mr. Rodriguez.  Defendant was not facing Mr. Rodriguez as he walked towards her.  Her back was to him.

When Officer Michael Geitheim arrived, defendant was in front of a nearby market.  Officer Geitheim found the knife in a trash can in front of the market.  Officer Geitheim described defendant's demeanor:  "[V]ery spastic movements, very talkative, fast, rapid speech, real fidgety, appeared to be under the influence."

Ronald Byrd lived next door to Mr. Rodriguez's building.  Mr. Byrd had first seen defendant in the neighborhood four or five days prior to the stabbing.  She would walk back and forth on the street yelling at people.  Mr. Byrd described defendant's demeanor just prior to the stabbing:  "[S]he was angry[.]  [S]he was throwing things at different cars

---

[1]  Further statutory references are to the Penal Code unless otherwise stated.

passing by." Mr. Byrd further testified: "[S]he was like she was upset, . . . just talking, talking, just angrily talking, just upset. She wasn't really talking to anybody. She was just talking." Mr. Byrd could not hear anything defendant said. Mr. Byrd could not tell whether defendant and Mr. Rodriguez had any conversation in the moments before the stabbing. It did not appear to Mr. Byrd that they spoke to each other. Mr. Byrd did not see defendant and Mr. Rodriguez interact in any way on that day or on any previous day. Following the attack, defendant walked down the block to a corner store. Defendant was still there when police officers arrived.

On cross-examination, Mr. Byrd explained that he did not think the shopping cart belonged to defendant: "Q. . . . You said something about a buggy? [¶] A. Yes, it was a shopping cart. You know how the homeless have the shopping carts out there. It was a sho[pp]ing cart. [¶] Q. So [defendant] had a shopping cart? [¶] A. No, I don't think she had a shopping cart. She was standing by a shopping cart. [¶] Q. Had you seen her with that shopping cart earlier? [¶] A. I didn't see her - - she was not somebody that I have seen pushing a shopping cart up and down the street. I didn't see her with personally that that's her shopping cart, no. I just saw her standing by the shopping cart." Defendant was standing in such a way that if she had been pushing the cart, she would have done so in the direction of Mr. Byrd's building.

III. DISCUSSION

A. The Requested Accident Instruction

It is well established that assault with a deadly weapon is a general intent crime. (*People v. Chance* (2008) 44 Cal.4th 1164, 1167; *People v. Williams* (2001) 26 Cal.4th 779, 782; *People v. Colantuono* (1994) 7 Cal.4th 206, 215-216; *People v. Rocha* (1971) 3 Cal.3d 893, 897-900; *People v. Hood* (1969) 1 Cal.3d 444, 452-458.) In *People v. Williams, supra,* 26 Cal.4th at pages 787-788, the court explained: "[A] defendant is only guilty of assault if he intends to commit an act 'which would be indictable [as a battery],

3

if done, either from its own character or that of its natural and probable consequences.' (1 Bouvier's Law Dict. [(1872)] at p. 166.) Logically, a defendant cannot have such an intent unless he actually knows those facts sufficient to establish that his act by its nature will probably and directly result in physical force being applied to another, i.e., a battery. [Citation.] In other words, a defendant guilty of assault must be aware of the facts that would lead a reasonable person to realize that a battery would directly, naturally and probably result from his conduct. He may not be convicted based on facts he did not know but should have known. He, however, need not be subjectively aware of the risk that a battery might occur." (See *People v. Wyatt* (2010) 48 Cal.4th 776, 781.) In a footnote, our Supreme Court further explained in *Williams*: "For example, a defendant who honestly believes that his act was not likely to result in a battery is still guilty of assault if a reasonable person, viewing the facts known to defendant, would find that the act would directly, naturally and probably result in a battery." (*People v. Williams, supra,* 26 Cal.4th at p. 788, fn. 3; accord, *People v. Wyatt, supra,* 48 Cal.4th at p. 781.) Our Supreme Court also noted: "[A]ssault does not require a specific intent to injure the victim. [Citation.]" (*People v. Williams, supra,* 26 Cal.4th at p. 788; see *People v. Wyatt, supra,* 48 Cal.4th at p. 786.) Our Supreme Court concluded: "[W]e hold that assault does not require a specific intent to cause injury or a subjective awareness of the risk that an injury might occur. Rather, assault only requires an intentional act and actual knowledge of those facts sufficient to establish that the act by its nature will probably and directly result in the application of physical force against another." (*People v. Williams, supra,* 26 Cal.4th at p. 790; see *People v. Wyatt, supra,* 48 Cal.4th at p. 786.)[2]

_____

[2] Here, the jury was instructed in part: "The crime[] charged in Count[] 1[, assault with a deadly weapon other than a firearm] and the lesser crime of simple assault . . . require proof of the union, or joint operation, of act and wrongful intent. [¶] For you to find a person guilty of these crimes, that person must not only commit the prohibited act, but must do so with wrongful intent. A person acts with wrongful intent when she intentionally does a prohibited act on purpose, however, it is not required that she intend to break the law. The act required is explained in the instruction for that crime." The jury was further instructed: "The defendant is charged in count 1 with assault with a deadly weapon in violation of Penal Code section 245[, subdivision (a)(1)].

4

Defendant's trial attorney, Deputy Public Defender Ronald Tripp, requested an instruction on accident as a defense. Mr. Tripp argued in connection with the instruction on accident: "Based on the testimony of Mr. Byrd, it seems that there is some evidence that Ms. De La Cruz might have accidentally stabbed [Mr. Rodriguez] in the face, apparently, through his gestures he showed that he –" The trial court interrupted. The trial court explained: "[T]he act that would be accidental would be the - - in element one, the defendant did an act that by its nature would directly and probably result in the application of force. [¶] The act as has been presented is that [defendant] reached into the shopping cart, pulled out the knife and swung it. Where was there substantial evidence that that act was accidental? Making contact with a face, that may not have been her intent, but that's not required. The act is the swinging of the knife. [¶] The next act is that it would be, by its nature, would directly and probably result in the application of force to a person. What part is accidental? That she accidentally hit his face or she just - - she didn't mean to hit his face. . . . It is not required that she intended

---

To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant did an act with a deadly weapon other than a firearm that by its nature would directly and probably result in the application of force to a person. [¶] 2. The defendant did that act willfully; [¶] 3. When the defendant acted, the defendant was aware of facts that would lead a reasonable person to realize that the defendant's act by its nature would directly and probably result in the application of force to someone; [¶] AND [¶] 4. When the defendant acted, the defendant had the present ability to apply force with [a] deadly weapon other than a firearm to a person. [¶] Assault in violation of Penal Code section 241[, subdivision (a)] is a lesser crime to the crime charged in count 1. [¶] To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant did an act that by its nature would directly and probably result in the application of force to a person; [¶] 2. The defendant did that act willfully; [¶] 3. When the defendant acted, she was aware of facts that would lead a reasonable person to realize that her act by its nature would directly and probably result in the application of force to someone; [¶] AND [¶] 4. When the defendant acted, she had the present ability to apply force to a person. [¶] Someone commits an act *willfully* when he or she does it willingly or on purpose. It is not required that he or she intend to break the law, hurt someone else, or gain any advantage. [¶] . . . The People are not required to prove that the defendant actually intended to use force against someone when the defendant acted. [¶] . . . [¶] Voluntary intoxication is not a defense to assault."

5

to cause injury." Mr. Tripp responded, "I see what you are saying." The trial court continued: "It is required - - if you are telling me the act of swinging the knife is accidental, and substantial evidence of it, direct me to it. [¶] You are free to argue that the act would - - what she was doing would not directly and probably result in the application of force. You are free to argue that it was not done willfully. You are free to argue that they could only show that she had the present ability. But the 'accident' part is just referring to just swinging the knife. I didn't hear substantial evidence that that was accidental. I heard evidence that that was intentional." Mr. Tripp responded, "I will submit, your Honor." Section 26 creates the statutory defense of accident: "All persons are capable of committing crimes except those belonging to the following classes: [¶] . . . [¶] Five—Persons who committed the act . . . through misfortune or by accident, when it appears that there was no evil design, intention, or culpable negligence." CALCRIM No. 3404 reflects the statutory defense. (*People v. Anderson* (2011) 51 Cal.4th 989, 996; see *People v. Villanueva* (2008) 169 Cal.App.4th 41, 53.) As applicable to a general intent crime, CALCRIM No. 3404 explains: "The defendant is not guilty of [assault with a deadly weapon] if (he or she) acted . . . without the intent required for that crime, but acted instead accidentally. You may not find the defendant guilty of [assault with a deadly weapon] unless you are convinced beyond a reasonable doubt that (he or she) acted with the required intent." (See *People v. Anderson, supra,* 51 Cal.4th at p. 996.)

The trial court was not required to instruct with CALCRIM No. 3404 absent substantial evidence supporting it. (*People v. Hartsch* (2010) 49 Cal.4th 472, 500; *People v. Bolden* (2002) 29 Cal.4th 515, 558.) Our Supreme Court has explained: "It is well settled that a defendant has a right to have the trial court . . . give a jury instruction on any affirmative defense for which the record contains substantial evidence [citation]— evidence sufficient for a reasonable jury to find in favor of the defendant [citation]— unless the defense is inconsistent with the defendant's theory of the case [citation]. In determining whether the evidence is sufficient to warrant a jury instruction, the trial court does not determine the credibility of the defense evidence, but only whether 'there was

6

evidence which, if believed by the jury, was sufficient to raise a reasonable doubt . . . .' [Citations.]" (*People v. Salas* (2006) 37 Cal.4th 967, 982-983; accord, *People v. Mentch* (2008) 45 Cal.4th 274, 288.)

On appeal, defendant asserts substantial evidence supported an accident instruction. Defendant argues: "[Defendant] was agitated on the day of the incident, and appeared to be under the influence of some type of intoxicant. [Defendant] also had behaved in this manner on the days preceding the accident. She had directed her invectives at various passersby, and hurled a few items, but not at [Mr.] Rodriguez. There was evidence [defendant] was unaware of [Mr. Rodriguez's] presence prior to the stabbing. [Defendant] was digging through the contents of a shopping cart that did not belong to her. Finding a knife, she pulled it out of the cart, swinging it backwards for no apparent reason." Defendant asserts: "All of these facts tended to undermine any motive for [defendant's] act. Why would [defendant] blindly swing a knife backwards? The key bit of evidence the [trial] court overlooked was Officer Geitheim's testimony as to [defendant's] physical condition. [Officer Geitheim] described [defendant] as having 'very spastic movements, very talkative, fast, rapid speech, real fidgety, appeared to be under the influence.' [Record citation.] [¶] The principal definition of 'spastic is: '1. a: of, relating to, characterized by, or affected with or as if with spasm <a *spastic* patient>[.]' (Webster's New Third Internat. Dict. (3d ed. 1981).) original italics.) The same work's principal definition of 'spasm' is '1: an involuntary and abnormal muscular contraction[.]' (*Ibid.*) Applied to Officer Geitheim's testimony, it is fair to say the evidence showed [defendant] was suffering from *ongoing involuntary and abnormal muscular contractions.* [¶] This testimony is consistent with and supportive of the view that [defendant's] wild flailing of the knife was simply one instance of her involuntary and abnormal muscular contractions. This view of the evidence could reasonably explain why [defendant] would make what appeared to be an aggressive and unjustified physical assault for no apparent reason. While she had been vocally abusing others in the days preceding the incident, there was no evidence suggesting she had touched anyone or possessed any type of weapon. At the time of the incident, she was rummaging through

7

someone else's belongings when she discovered a knife, which she pulled from the cart, and then jerked to the rear. In short, there was substantial evidence supporting the defense of accident, and the court erred by refusing the instruction."

There was no substantial evidence defendant swung the knife accidentally. There was no evidence defendant was rummaging in the shopping cart and pulled out the knife. Instead, the evidence was that as Mr. Rodriguez passed behind her, defendant reached into the cart and pulled out the knife. Further, defendant had been walking back and forth along the sidewalk yelling at people for several previous days. Prior to the assault, defendant was angry. She was throwing things at passing cars. Moreover, even if defendant stabbed Mr. Rodriguez by accident, she pulled the knife from the shopping cart and swung it in his presence. Following the attack, defendant walked away and tossed the knife into a trash can.

In the days preceding the stabbing, Mr. Byrd had seen defendant walking back and forth in the street yelling at people. A reasonable person knowing what defendant knew would realize that swinging a knife in such circumstances would directly, naturally and probably result in a battery. The prosecutor was not required to prove defendant was subjectively aware of the risk that an injury might occur. (*People v. Wyatt, supra,* 48 Cal.4th at p. 781; *People v. Williams, supra,* 26 Cal.4th at pp. 788, 790.)

It is true that Officer Geitheim described defendant's movements as spastic and fidgety. But he attributed her condition to drug use. There was no evidence that defendant suffered from involuntary, abnormal muscle contractions that could have caused her to accidentally swing her arm back.

Our Supreme Court has not yet determined the test of prejudice applicable to a failure to instruct on an affirmative defense. (*People v. Salas, supra,* 37 Cal.4th at p. 984; *People v. Williams* (2009) 176 Cal.App.4th 1521, 1530.) But even if the trial court had erred, we would hold any error was harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18, 24; *People v. Flood* (1998) 18 Cal.4th 470, 502-503 [failure to instruct on an element, raising an improper presumption or directing a verdict or finding subject to *Chapman* review for prejudice].) Mr. Tripp never argued to the jury

that defendant swung the knife accidentally as a result of an involuntary muscle contraction. Further, the jury was instructed with CALCRIM No. 252, concurrence of act and general criminal intent, and CALCRIM No. 875, defining assault and deadly weapon assault. As instructed, and in finding defendant guilty, the jury necessary concluded she intended to swing the knife.

## B. Presentence Custody Credit

Defendant was arrested on January 9, 2012. She was declared mentally incompetent to stand trial on July 13, 2012. Defendant was transferred from the county jail to Patton State Hospital on October 1, 2012. A section 1370, subdivision (a) court report dated December 19, 2012 was prepared. In that report, a licensed clinical social worker and staff psychiatrist recommended defendant be returned to court as competent to stand trial pursuant to section 1372, subdivision (a). An undated Certificate of Mental Competence was issued. The parties agree, however, that the undated certificate was issued on December 19, 2012. Defendant was not returned to the county jail until January 7, 2013. Defendant was sentenced on May 20, 2013. Because defendant's presentence custody and conduct credit award exceeded the length of her two-year sentence, she was released. The trial court awarded defendant 401 days of presentence custody credit, 400 days of conduct credit, and 98 days of credit for time spent at Patton State Hospital.

The parties agree that defendant remained at the state hospital for 19 days after she was found competent to stand trial. Between December 19, 2012, and January 7, 2013, the authorities simply delayed returning defendant to the county jail. Defendant was entitled to presentence custody credit for all days of confinement in the county jail *and in the state hospital*. (§ 1375.5; *People v. Mendez* (2007) 151 Cal.App.4th 861, 864-865.) Defendant was in custody for 498 days, from her arrest on January 9, 2012, through her sentencing on May 20, 2013. Defendant was not entitled to conduct credit from October 1, 2012, when she was transferred to Patton State Hospital, to December 19, 2012, when

she was certified competent to stand trial. (*People v. Bryant* (2009) 174 Cal.App.4th 175, 177, 182-184.) Therefore, defendant should have received 498 days of presentence custody credit and 418 days of conduct credit. The question of credits is not moot as applied to a defendant released on parole. (§ 1170, subd. (a)(3); *People v. Lara* (1988) 206 Cal.App.3d 1297, 1303; *In re Carter* (1988) 199 Cal.App.3d 271, 273; *In re Vargas* (1985) 172 Cal.App.3d 316, 320, fn. 4; *In re Reina* (1985) 171 Cal.App.3d 638, 642; *In re Ballard* (1981) 115 Cal.App.3d 647, 650; see *People v. Valencia* (2014) 226 Cal.App.4th 326, 329; *In re Bush* (2008) 161 Cal.App.4th 133, 140-141.) The judgment must be modified to award defendant additional conduct credit.

## C. Restitution Fine

We asked the parties to brief the question whether the trial court's imposition of a $280 restitution fine (§ 1202.4, subd. (b)) and a $280 parole revocation restitution fine (§ 1202.45) violated ex post facto principles. The imposition of restitution fines constitutes punishment and is thus subject to the ex post facto clauses of the state and federal Constitutions. (*People v. Souza* (2012) 54 Cal.4th 90, 143; *People v. Avila* (2009) 46 Cal.4th 680, 729.) Defendant committed the present crime on January 9, 2012, and was sentenced on May 13, 2013. When defendant committed the present crime, former section 1202.4, subdivision (b) authorized a restitution fine set in the trial court's discretion in an amount between $240 and $10,000. (Stats. 2011, ch. 358, § 1.) The section 1202.45 parole revocation restitution fine is to be in the same amount as that imposed pursuant to section 1202.4, subdivision (b). (§ 1202.45; *People v. Villalobos* (2012) 54 Cal.4th 177, 181; *People v. Soria* (2010) 48 Cal.4th 58, 62.) The $280 restitution fine imposed in this case was within the mandated range. We presume the trial court applied the law in effect at the time defendant committed the present offense and chose, in its discretion, to impose a $280 fine. (Evid. Code, § 664; *In re Jacob J.* (2005) 130 Cal.App.4th 429, 437-438, disapproved on another point in *In re Julian R.* (2009) 47

Cal.4th 487, 499; *People v. Mosley* (1997) 53 Cal.App.4th 489, 496.)  The $280 restitution fine imposed in this case was within the statutory range.  There was no error.

## IV.  DISPOSITION

The judgment is modified to award defendant 498 days of custody credit and 418 days of conduct credit.  The judgment is affirmed in all other respects.  Upon remittitur issuance, the clerk of the superior court is to prepare an amended abstract of judgment and deliver a copy to the Department of Corrections and Rehabilitation.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

TURNER, P. J.

We concur:

KRIEGLER, J.

MINK, J.[*]

---

[*]  Retired Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.